# UNITED STATE DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00944-JL |
| | ) | |
| **TOWN OF LISBON and NEW** | ) | |
| **HAMPSHIRE DEPARTMENT** | ) | |
| **OF JUSTICE** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## PLAINTIFF'S OBJECTION TO EUGENE VOLOKH'S MOTION UNSEAL THE RECORD AND OPPOSE PSEUDONYMITY

NOW COMES the Plaintiff, John Doe, by and through his counsel, Cooper Cargill Chant, P.A., and hereby OBJECTS to Eugene Volokh's Motion to Unseal the Record and Oppose Pseudonymity in the above-captioned matter.

In brief, Professor Volokh argues that sealing and pseudonymity are not appropriate in this case. Plaintiff respectfully disagrees.

## COMPLAINT and FACTS

Plaintiff has alleged, in brief, that Defendant Town of Lisbon ("Town") improperly caused him to be listed on the Exculpatory Evidence Schedule ("EES"), generally a list of police officers found to have a credibility issue. Amended Complaint, at ¶¶ 12-40. The EES is maintained by the New Hampshire Department of Justice ("NHDOJ"). Amended Complaint, at ¶¶ 30; RSA 105:13-d. Putative Intervenor Professor Volokh requests that this Court unseal the record and strip Plaintiff of pseudonymity.

LAW

Despite the public's "strong interest in an open litigation process," courts have inherent authority to allow plaintiffs to proceed anonymously. *Verogna v. Twitter, Inc.*, 2020 U.S. Dist. LEXIS 155565, *3 (D.N.H. Aug. 27, 2020). Courts regularly allow plaintiffs to file lawsuits anonymously, even when there is no specific rule or procedure for doing so. See generally, Donald P. Balla, *John Doe Is Alive and Well: Designing Pseudonym Use in American Courts*, 63 Ark. L. Rev. 691, 691 (2010).

RSA 105:13-d governs the maintenance of the EES by the Department of Justice. Under the terms of RSA 105:13-d, the "name and corresponding information" related to an officer placed on the EES shall not be made public so long as there is "a pending legal action regarding the officer's placement on the exculpatory evidence schedule." RSA 105:13-d(II)(d). Such information is only to be made public "[o]nce the pending action has concluded with a final order" and after all appeals have been exhausted. *Id.* See also RSA 105:13-d(III)(b) ("[officer's] name and corresponding information on the exculpatory evidence schedule shall become public only after the completion of the grievance process, and after the officer has exhausted all appellate rights").

Moreover, RSA 105:13-d(V) specifically states that "[n]othing herein shall preclude the court from taking any necessary step to protect the anonymity of the officer before entry of a final order."

In the absence of statutory authority directly addressing a party's capacity to proceed with a pseudonym, the Courts have generally recognized several factors to be weighed in making such a determination. See, *e.g.*, *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011). In *Verogna v.*

*Twitter, Inc.*, this Court employed the same non-exhaustive list of factors as used by the Third

Circuit Court of Appeals in *Megless*:

> "(1) the extent to which the identity of the litigant has been kept confidential;
>
> (2) the bases upon which disclosure is feared or sought to be avoided, and the
>
> substantiality of these bases;
>
> (3) the magnitude of the public interest in maintaining the confidentiality of the
>
> litigant's identity;
>
> (4) whether, because of the purely legal nature of the issues presented or
>
> otherwise, there is an atypically weak public interest in knowing the litigant's
>
> identities;
>
> (5) the undesirability of an outcome adverse to the pseudonymous party and
>
> attributable to his refusal to pursue the case at the price of being publicly
>
> identified; and
>
> (6) whether the party seeking to sue pseudonymously has illegitimate ulterior
>
> motives."

*Verogna*, No. 20-CV-536-SM, 2020 WL 5077094, at *2 (citing *Megless*, 654 F.3d at

409).

## ARGUMENT

The statutory framework for challenging inclusion on the EES specifically provides for

withholding the "name and corresponding information" of a police officer from the public until

the entry of a final judgment. RSA 105:13-d(II)(d). In light of the clear and unambiguous

directives of RSA 105:13-d, no challenge to maintaining Plaintiff's anonymity can succeed short

of a direct challenge on the constitutionality of the statute, which Professor Volokh has not raised.

Even if RSA 105:13-d falls just short of specifically authorizing pseudonymous litigation and the sealing of records, or if this Court takes Professor Volokh's suggestion that State law should not govern this arguably procedural issue, the posture of this case justifies the measures that have been taken to protect Plaintiffs identity. Again, RSA 105:13-d(V) specifically states that "[n]othing herein shall preclude the court from taking any necessary step to protect the anonymity of the officer before entry of a final order."

As an alternative basis for keeping the record sealed and maintaining pseudonymity, Plaintiff contends that the factors enumerated in *Megless* and utilized in *Verogna* weigh in favor of protecting his identity.

As to the first factor, Plaintiff's identity has remained confidential since the inception of this case, with the assent of both the state and federal courts and the Attorney General of New Hampshire. New Hampshire Department of Justice partially redacted the EES before it released the EES to the public this spring. Exhibit 1 (EES as published by the Attorney General on March 29, 2022 https://www.doj.nh.gov/exculpatory-evidence-schedule/documents/ees-list.pdf). Among the redacted information is the name of any officer with a pending lawsuit to have his or her name removed from the list. Consequently, Plaintiff's inclusion on the list is not public knowledge. This is entirely distinguishable from *Megless*, in which the document with allegedly defamatory statements had already been widely published "and countless people in the community viewed it." *Megless*, 654 F.3d at 410. Plaintiff's name has remained confidential, and there has been no public disclosure to date.

As to the second factor, the bases for seeking anonymity are substantial and compelling. In *Megless*, the plaintiff "fear[ed] that if others learn of his identity, they will believe that he is a pedophile." *Id.* In analyzing this factor, the court noted, "whether Plaintiff is a pedophile is not at issue here. Instead, the question is whether the Defendants can be liable for distributing a flyer." (Cleaned up.) *Id.* In this case, unlike in *Megless*, the issue is whether Plaintiff belongs on the EES *at all*, not simply whether Defendants can be liable for improperly attempting to put him on the EES in the first place. See, *e.g.*, <u>Amended Complaint</u>, at ¶ 55 (alleging and seeking a ruling that the alleged underlying conduct is not potentially exculpatory). It is an important point of distinction that Plaintiff seeks an affirmative ruling on merits of the underlying statements, not simply damages for the Defendants having made them.

Moreover, one of the most commonly recognized bases for anonymity is holding a religious belief that "invited an opprobrium analogous to the infamy associated with criminal behavior." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). Although this case does not involve a religious belief, inclusion on the EES invites opprobrium analogous to the infamy associated with criminal behavior, because it amounts to being publicly branded as a "dishonest cop" or even worse. In the modern political climate, being listed among law enforcement officers who have engaged in excessive use of force, perjury, or other criminal conduct is a practical invitation for scorn, derision, or worse. See <u>Exhibit 2</u> (Law Enforcement Memorandum: The Exculpatory Evidence Protocol and Schedule (March 21, 2017)) (listing categories of exculpatory evidence, including the abuse of power to gain sexual favors, excessive use of force, etc.).

As to the third factor, the State of New Hampshire's elected representatives have made it clear that the public has a strong interest in protecting the identity of police officers who have been improperly listed on the EES. The Attorney General of New Hampshire redacts the EES to

protect the identity of officers who lodge challenges to their inclusion on the EES. This is
consistent with the General Court of New Hampshire's intent in passing RSA 105:13-d, which
generally directs that the names and corresponding information about officers who challenge
their inclusion on the EES should not be made public until all legal challenges and appeals have
been resolved. The public has an interest in protecting the identity of improperly implicated
officers until they have had a chance to challenge their inclusion on the EES, as this practice will
protect innocent law enforcement officers and tend to to keep good and honest officers in the
ranks.

Furthermore, when analyzing this factor, the *Megless* court noted that anonymity is less
necessary in cases where there are not likely to be other similarly situated plaintiffs. *Megless*,
654 F.3d at 410. Unlike the highly specific alleged defamation in *Megless*, challenges to
inclusion on the EES are relatively common. See Exhibit 1 (redacting the names of dozens of
officers who have filed lawsuits challenging their inclusion on the EES).

As to the fourth factor, this case turns primarily on legal questions. It is true that some
factual questions need to be resolved, but much of the case will turn on the requirements and
application of RSA 106-L-6, VII and IX (requiring fitness testing for police officers) and the
legal question of whether *Brady v. Maryland* (373 U.S. 83 (1963)) and *State v. Laurie* (139 N.H.
325 (1995)) mandate disclosure of the alleged underlying misconduct. The public certainly has
an interest in what police conduct merits inclusion on the EES; but the resolution of those legal
questions is totally independent of Plaintiff's identity.

As to the fifth factor, the *Megless* court recognized that "the public is harmed when
alleged abuses of power by public officials go unchallenged because plaintiffs fear litigating
publicly." *Megless*, 654 F.3d at 410. The allegations of this case are that the Defendants—

government officials in positions of power over Plaintiff—improperly caused Plaintiff to be listed on the EES.

If Plaintiff's name is published at this stage, the damage will be done; even if he is ultimately successful, his name will irreversibly be tied to the EES and the opprobrium attendant thereto. For this very reason, RSA 105:13-d specifically contemplates keeping officers' identities secret until after a final judgment on the merits. Litigating under a pseudonym and sealing the record are the only ways to protect Plaintiff and other wrongly implicated police officers, and to encourage the resolution of their claims on the merits.

As to the sixth factor, Professor Volohk does not suggest, nor is there any implication, that Plaintiff has proceeded anonymously for nefarious or illegal reasons. Moreover, because Plaintiff is not currently working as a police officer, there is no legitimate public concern that his anonymity in these proceedings will somehow shield him from the consequences of any misconduct in the line of duty.

CONCLUSION

Plaintiff's effort to remain anonymous is not, as Professor Volokh attempts to cast it, a cynical ploy to allow a disgruntled ex-employee to sue his old boss without future bosses knowing about it. These proceedings are an effort to prevent his name and reputation from being sullied *in the first instance*. RSA 105:13-d establishes a statutory framework that *repeatedly* stresses the importance of allowing listed officers to challenge their inclusion on the EES anonymously, so that an improper or inadvertent listing does not indelibly mar their good name.

Plaintiff does not dispute that economic or reputational harms are generally insufficient to warrant pseudonymity. See, *e.g.*, *Megless*, 654 F.3d at 408. Nor does Plaintiff dispute that, as one court has put it, "to prevent disclosure of their identities in all such cases would create an

exception that virtually swallows the rule." *Doe v. Prudential Ins. Co. of America*, 744 F. Supp. 40, 42 (D.R.I. 1990).

However, Plaintiff does not seek a broad exception to the general rule. His is one of a small handful of cases brought under a particular statutory scheme—RSA 105:13-d—that specifically contemplates allowing plaintiffs to proceed anonymously. There is, therefore, no chance of this Court creating an exception that swallows the general rule against anonymous litigation.

Moreover, any interest that Professor Volokh has in knowing Plaintiff's name turns on this Court's eventual final judgment on the merits in this case. If Plaintiff is ultimately unsuccessful in vindicating himself, his name will appear on the EES for all the world to see. If, however, Plaintiff is successful in showing that he does not belong on the EES, his name will be of no particular interest to Professor Volokh or the pubic. He will simply be one of the vast majority of New Hampshire law enforcement officers whose personnel record does *not* include potentially exculpatory evidence.

This Court should honor the intent of the New Hampshire General Court and abide by the statutory framework for withholding Plaintiff's name from the public until final judgment. Alternatively, this Court should find that Plaintiff has met the burden laid out in *Megless* for proceeding anonymously.

A separate memorandum is unnecessary as the relevant facts and citations of law are included in this Objection.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

a.  Deny Eugene Volokh's Motion to Unseal the Record and Oppose Pseudonymity,

b.  Grant such further relief as is deemed appropriate.

Respectfully submitted,

**PLAINTIFF,**
JOHN DOE,
By His Attorneys,

COOPER CARGILL CHANT, P.A.

Dated:  05/05/2022  _____          /s/ Christopher T. Meier
                                          _____
                                          Christopher T. Meier, Bar ID # 17135
                                          2935 White Mountain Highway
                                          North Conway, New Hampshire 03860
                                          Tel:    (603) 356-5439
                                          Fax:    (603) 356-7975
                                          Email:  cmeier@coopercargillchant.com

## CERTIFICATE OF SERVICE

I, Christopher T. Meier, hereby certify that on the date shown, I delivered the foregoing document to all parties and counsel of record by e-file.

Dated:  05/05/2022  _____          /s/ Christopher T. Meier
                                          _____
                                          Christopher T. Meier, Bar ID # 17135