## ATTORNEY GENERAL
## DEPARTMENT OF JUSTICE

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397

JOSEPH A. FOSTER
ATTORNEY GENERAL

ANN M. RICE
DEPUTY ATTORNEY GENERAL



## LAW ENFORCEMENT MEMORANDUM

TO:     All New Hampshire Law Enforcement Agencies
        All County Attorneys

FROM:   Joseph A. Foster, Attorney General

RE:     The Exculpatory Evidence Protocol and Schedule[1]

DATE:   March 21, 2017

## INTRODUCTION

Over fifty years ago, in a landmark case establishing the obligation of a prosecutor to provide potentially exculpatory evidence to the defense, the United States Supreme Court noted:

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963). This bedrock principle of the criminal justice system forms the basis of a prosecutor's obligation to inform criminal defendants of any exculpatory and/or impeachment evidence which relates to their case. Exculpatory evidence is evidence that is favorable to the accused. This includes evidence that is material to the guilt, innocence, or punishment of the accused or that may impact the credibility of a government witness, including a police officer. It is paramount that this obligation is scrupulously complied with in order to maintain the public's confidence in the criminal justice system.

Case law also makes clear that the existence of exculpatory evidence known to law enforcement is imputed to the prosecutor. Together, the obligation to produce and the imputation of knowledge creates tension between the right to confidentiality in a

---

[1] This protocol is intended to replace the 2004 Heed Laurie Memorandum. The Exculpatory Evidence Schedule ("EES") replaces the *Laurie* list.

1

government witness's personnel file and the prosecutor's need to know whether the records contain potentially exculpatory evidence. It is my hope that this new protocol will strike a more comfortable balance between these two competing interests, while ensuring that all criminal defendants in New Hampshire are treated fairly.

In 2004, Attorney General Peter Heed issued a New Hampshire Department of Justice memorandum entitled "Identification and Disclosure of *Laurie* Materials." The Heed Memorandum was produced to update law enforcement on the developments in the law since *State v. Laurie*, 139 N.H. 325 (1995), and the 1996 Memorandum issued by Attorney General Jeffery Howard. The Heed Memorandum established standardized guidelines and policies that are followed throughout the State today by prosecutors and police departments to identify, manage, and disclose exculpatory evidence contained in police personnel files.

Since 2004, the case law related to the disclosure of *Laurie* material has evolved and RSA 105:13-b, the statute governing the confidentiality of police personnel files has been extensively rewritten and reenacted. The statute now makes an exception to the otherwise confidential nature of police personnel files for direct disclosure to the defense of exculpatory evidence in a criminal case. It also provides that, "the duty to disclose exculpatory evidence that should have been disclosed prior to trial ... is an ongoing duty that extends beyond a finding of guilt."

In 2015, the New Hampshire Supreme Court decided *Duchesne v. Hillsborough County Attorney*, 167 N.H. 774 (2015). In *Duchesne,* the Court was critical of a number of procedures set forth in the Heed Memorandum. Specifically, the Court criticized the procedure of <u>automatic</u> disclosure *in camera* to trial courts of personnel files as had been mandated under the prior language of the statute and the Heed Memorandum. The Court encouraged an independent review of the potentially exculpatory materials by the prosecutor, emphasizing that it is the prosecutor's duty to make these assessments and that the revisions to RSA 105:13-b provided a mechanism for this review and disclosure. *Id.* at 781.

In 2016, the New Hampshire Supreme Court determined that an officer was provided with adequate due process prior to his name being placed on the *Laurie* list, after his internal investigation file was reviewed by a superior officer and the chief of police, and he was then given the opportunity to meet with the chief and later the opportunity to meet with the Police Commission. *Gantert v. City of Rochester*, 168 N.H. 640, 650 (2016).

In light of these changes and the evolution of the law, the *Laurie* protocol has been updated. This new protocol has been reviewed by the each of the state's County Attorneys, many chiefs of police, and the Director of the New Hampshire State Police.[2]

---

[2] On January 3, 2017, I issued a Law Enforcement Memorandum that raised concerns with some members of the law enforcement community. Those concerns have been considered and this Memorandum amends and replaces the January 3 Memorandum.

The new protocol retains the list requirement. However, the list will now be called the Exculpatory Evidence Schedule ('EES"). The EES will include designations to distinguish between officers with credibility issues and officers with other potentially exculpatory evidence in their personnel files. The schedule must be maintained for two primary reasons: first, without the assistance of a list prosecutors cannot meet their daily obligation to disclose exculpatory information imputed to them but maintained in protected personnel files; and second, maintenance of the list is precisely the type of procedure contemplated by the United States Supreme Court to ensure that this prosecutorial duty is effectively discharged. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

It is important to recognize that inclusion on the EES does not mean that an officer is necessarily untrustworthy or dishonest—and in many cases the designation on the EES will make clear there is no question of dishonesty. Nor does it mean that information contained in an officer's personnel file will be used at trial or otherwise become public. It simply means that there is information in the file that must be disclosed to a criminal defendant if the facts of the case warrant that disclosure. Whether that material will be used at trial to cross-examine the officer will be the subject of pre-trial litigation.

The 2017 protocol mandates several important changes to existing guidelines and sample policy. (Please see the attached protocol for the details related to these changes). The most significant changes are as follows:

- The *Laurie* list will now be known as the Exculpatory Evidence Schedule ("EES"*)*. The EES will include designations to inform prosecutors whether the personnel-file conduct at issue is related to credibility, excessive force, failure to comply with legal procedures, and mental illness or instability will only be based upon acts or events first occurring after the individual became a law enforcement officer.

- By September 1, 2017, each police chief, high sheriff, colonel or other head of a law enforcement agency (together hereinafter referred to as the "Chief") shall have completed a review of the personnel files[3] of all officers in their agency to ensure the accuracy of the new EES. Chiefs will provide an updated EES to the County Attorney for their jurisdiction and to the Attorney General or designee by September 1, 2017, and then at least annually by July 1st of each year and more often as necessary. On or before, September 1, 2017, the Chief shall certify as to the accuracy and completeness of his or her review of the files, using the form attached. If there is a question regarding whether the conduct documented in the file is

---

[3] "Personnel files" include all materials related to an officer's employment as defined in N.H. Admin. Rules, Lab 802.08, to include internal investigation materials, background and hiring documents, medical and mental health documents and any other related materials regardless of where the materials are kept or how they are labeled by the employer. For purposes of Exculpatory Evidence Schedule, the Chief shall only disclose matters first arising after an individual becomes a law enforcement officer.

3

potentially exculpatory, the Chief should consult with the County Attorney.

- The Attorney General's Office will provide a training for Chiefs and other law enforcement officials this Spring and periodically thereafter to provide Chiefs guidance as to what exculpatory evidence must be disclosed.

- All officers placed on the EES will be notified by the Chief and/or the County Attorney.

- At all times prosecutors retain the constitutionally based and ethical obligation to determine whether the personnel file of any officer who is a potential witness in a criminal case contains potentially exculpatory evidence. Because the EES is limited to events that first arise during the officer's employment in law enforcement, it is possible it will not include all potentially relevant exculpatory evidence. The prosecutor's obligation may be met by the prosecutor personally reviewing the personnel file of an officer who is expected to be a witness in a pending case and by inquiry of the officer.

- In compliance with RSA 105:13-b, prosecutors will provide potentially exculpatory evidence directly to the defense for any law enforcement witnesses in the case. This disclosure should be done in conjunction with a protective order until it is determined that the information is admissible at trial. A sample protective order is attached for guidance.

- If the prosecutor is unable to determine whether the information is potentially exculpatory in a particular case, the documentation from the personnel file will be submitted *in camera* for the court's review and its determination of whether the evidence is exculpatory in that case.

- All complaints of lack of credibility, excessive force, failure to comply with legal procedures, and mental illness or instability[4] must remain in an officer's personnel file, until a determination is made that the complaint is unfounded, exonerated, not sustained or sustained.[5] Any complaints, determined to be sustained (meaning the evidence proved the allegations true) or not sustained (meaning the evidence is insufficient to determine

---

[4] Only instances of mental illness or mental instability that caused the law enforcement agency to take some affirmative action to suspend the officer as a disciplinary matter should be considered exculpatory. Any incident for which no disciplinary action was taken, shall not be considered exculpatory evidence. For example, a directive by a Chief to an officer to seek mental health treatment following a traumatic incident or event (on or off the job) does not result in the officer being included on the EES. Mental health treatment should not be stigmatized but where appropriate, encouraged.

[5] "Unfounded" means any allegation that was investigated and found devoid of fact or false. "Exonerated" is a finding that the allegation is true, but that act was lawful and consistent with policy. "Not sustained" is any allegation for which the evidence was insufficient to either prove or disprove. "Sustained" is any allegation for which the evidence was sufficient to prove the act occurred.

4

whether the allegation is true or false) must be preserved in the officer's personnel file throughout the officer's career and retirement, unless the finding is later overturned.

- The new protocol eliminates the ten-year rule for maintaining an officer's name on the EES.[6]

- If an allegation is determined to be unfounded, or if the officer is exonerated after challenging the disciplinary action, the officer's name will be taken off the EES after consultation with the Attorney General or designee.

- An officer may **not** avoid inclusion on the EES by resigning his position. If an officer does resign, the disciplinary investigation must be preserved in the officer's personnel file and the complaint will be treated as a sustained complaint for purposes of the EES.

- All law enforcement officers have a personal obligation to notify the prosecutor in any case in which they may be a witness if they have potentially exculpatory evidence in their personnel file. In the coming months, the Attorney General's office will develop a training for all certified New Hampshire law enforcement officers

- All law enforcement agencies should review and consider adopting the Model Brady Policy developed by the International Association of Chiefs of Police. If your department adopted the sample policy attached to the Heed Memorandum as a standard operating procedure, it should be rescinded and replaced with the Model Policy and with procedures consistent with the new protocol within 60 days with the following exception: all new standard operating procedures should maintain the internal review process set forth in the Heed Memorandum at paragraphs E through J, as revised in the attached protocol, approved in *Gantert v. City of Rochester,* 168 N.H. 640 (2016).

Ultimately, every prosecutor is responsible for determining whether the information in a police officer's personnel file is subject to disclosure based upon the facts and circumstances of a particular case, the officer's role in the investigation, the potential defenses being presented, and a review of the pertinent case law and rules of evidence. If questions remain, they can be directed to the Attorney General or designee.

---

[6] The Deputy Attorney General, Ann Rice, sent an email notice to all County Attorneys on June 25, 2014, to no longer remove officers from the *Laurie* list after ten years from the date of the conduct in question.

## 2017 PROTOCOL FOR IDENTIFYING WITNESSES WITH POTENTIALLY EXCULPATORY EVIDENCE IN THEIR PERSONNEL FILES AND MAINTANENCE OF THE EXCULPATORY EVIDENCE SCHEDULE ("EES")

### I. The heads of all law enforcement and government agencies retain an on-going obligation to identify and disclose potentially exculpatory materials in their employees' personnel files to the County Attorney in their jurisdiction and to the Attorney General or designee.

Given the protected status of the personnel files of government witnesses, it is imperative that agency heads remain diligent in disclosing to prosecutors any conduct by an employee that is documented in a personnel file that could be potentially exculpatory evidence in a criminal case. What constitutes exculpatory material is quite broad. For guidance in making this determination many of the types of conduct that have been found to be potentially exculpatory in case law are listed in Part III below.

The International Association of Chiefs of Police (IACP) developed a Model Brady Policy for law enforcement agencies which also provides many examples of *Brady* material and is consistent with this new policy. The Model Policy is attached to this memo.

### II. Personnel files include all internal investigation files, pre-employment records, and all mental health records.

For purposes of this protocol, a personnel file includes materials from all of the following records: internal investigation materials, background and hiring documents[1], medical and all mental health records[2], and any other related materials regardless of where the materials are kept or how they are labeled by the employer. While it may be common practice for a variety of legitimate reasons to maintain these records in separate locations, the "personnel file," as discussed in this protocol and in the case law, includes any potentially exculpatory material maintained by an employer.

The employer must maintain in personnel files all complaints against an employee that are pending investigation, are found not sustained (meaning the evidence is insufficient to determine whether the allegation is true or false) or are sustained (meaning

---

[1] While in most instances, background and hiring files document conduct that preceded employment in law enforcement which will not be relevant, courts in unique circumstances have held otherwise where the conduct involved credibility. Therefore, prosecutors in connection with a pending case may question a Chief or the officer and review such information to assess whether any pre-law enforcement conduct took place that warrants disclosure. For purposes of placement on the EES, only matters first arising after an individual became a law enforcement officer are relevant.

[2] Only instances of mental illness or instability that caused the law enforcement agency to take some affirmative action to suspend the officer as a disciplinary matter should be considered exculpatory. Any incident for which no disciplinary action was taken shall not be considered exculpatory evidence. For example, a directive to an officer to seek mental health treatment following a traumatic incident or event (on or off the job) does not result in the officer being included on the EES. Mental health treatment should not be stigmatized but instead, where appropriate, encouraged.

1

the evidence proved the allegation true). If that finding is later overturned and the complaint is determined to be unfounded or the officer is exonerated, the complaint and related investigatory documents may be removed. If a complaint is determined to be unfounded, or the officer is exonerated, the officer can be taken off the EES with the approval of the Attorney General or designee, and the records removed from the officer's personnel file.

### III. Identification of Potentially Exculpatory Materials

The term "potentially exculpatory material" is not easily defined because it is subject to refinement and redefinition on a case by case basis in the state and federal courts. Whether a court would view any particular piece of information as potentially exculpatory evidence depends, to some extent, on the nature of the information in question, the officer's role in the investigation and trial, the nature of the case, and the recency or remoteness of the conduct. However, when making the initial determination to place an officer's name on the EES it will be without the refining lens of the facts of a particular case. Yet, the only guidance available is extracted from case law. Nevertheless, as a general proposition, information that falls within any of the following categories should be considered potentially exculpatory evidence:

- A deliberate lie during a court case, administrative hearing, other official proceeding, in a police report, or in an internal investigation;
- The falsification of records or evidence;
- Any criminal conduct;
- Egregious dereliction of duty (for example, an officer using his/her position as a police officer to gain a private advantage such as sexual favors or monetary gain; an officer misrepresenting that he/she was engaged in official duties on a particular date/time; or any other similar conduct that implicates an officer's character for truthfulness or disregard for constitutional rules and procedures, including *Miranda* procedures);
- Excessive use of force;[3]
- Mental illness or instability that caused the law enforcement agency to take some affirmative action to suspend the officer for evaluation or treatment as a disciplinary matter; a referral for counseling after being involved in a traumatic incident, or for some other reason, for which no disciplinary action was taken shall not result in placement on the EES.

---

[3] Incidents of excessive use of force generally do not reflect on an officer's credibility, and thus, in the context of most criminal cases, would not be considered exculpatory material. However, in the context of a case in which a defendant raises a claim of aggressive conduct by the officer, such incidents would constitute exculpatory material, requiring disclosure.

2

### IV. In connection with a pending case, prosecutors may review law enforcement officers' personnel files.

The County Attorney or Attorney General, or their designees, may review the entire personnel file of an officer in connection with a pending case in which the officer may be a witness. This change is necessitated by the revisions to RSA 105:13-b, discussed above, and the developing case law.

The current version of RSA 105:13-b exempts exculpatory evidence from the confidential status of police personnel files. While the language of the statute leaves questions as to how to determine whether material is exculpatory if the entire file is not available, the legislature clearly intended prosecutors to have access to the previously confidential files to meet their discovery obligations. The legislative history of the statute reflects that it was revised to address a perception that law enforcement was hiding information in the confidential files and not properly reporting to prosecutors *Laurie* material.

This interpretation of the statute is consistent with the Court's ruling in *Theodosopoulos*, that "RSA 105:13-b cannot limit the defendant's constitutional right to obtain all exculpatory evidence." *State v. Theodosopoulos*, 153 N.H. 318, 321 (2006). The *Theodosopoulos* Court also upheld the trial court's order directing the prosecutor to review the personnel file of the witness and to produce any exculpatory evidence contained in the file directly to the defendant. *Id.* at 322.

More recently, in *Duchesne,* the Court was critical of the Heed protocol's mandate of <u>automatic</u> referral of the officer's personnel file to the trial court rather than the prosecutor reviewing the materials in the first instance. *Duchesne v. Hillsborough County Attorney,* 167 N.H. 774, 783-84 (2015). The *Duchesne* Court discussed the changes in RSA 105:13-b, and also interpreted the first paragraph of the new statute as a directive that exculpatory evidence be disclosed to the defendant. *Duchesne,* 167 N.H. at 781.

However, the practical reality is that prosecutors cannot review every officer's personnel file in every criminal case. Thus, it is imperative that the EES is properly updated and maintained. By September 1, 2017, each police chief, high sheriff, colonel or other head of a law enforcement agency (together hereinafter referred to as the "Chief") or their designee, shall complete a review of the personnel files[4] of all officers in their agency to ensure the accuracy of the new EES. A notation should be added to the new EES designating the type of exculpatory evidence contained in the file. These categories should include credibility, excessive force, failure to comply with legal procedures, and mental illness or instability. This designation should limit the necessity

---

[4] "Personnel files" include all materials related to an officer's employment as defined in N.H. Admin. Rules, Lab 802.08, to include internal investigation materials, background and hiring documents, medical and mental health documents and any other related materials regardless of where the materials are kept or how they are labeled by the employer. For purposes of placement on the Exculpatory Evidence Schedule, only matters first arising after an individual became a law enforcement officer are relevant.

3

for further and repeated reviews of the officer's file by informing prosecutors of the type of material contained in the file. Actions or events that took place prior to an officer's employment in law enforcement will not result in that officer's placement on the EES.[5]

Chiefs must provide the updated EES to the County Attorney in their jurisdiction and to the Attorney General or designee by September 1, 2017, and then at least annually by July 1st of each year and more often as necessary. Using the attached certification form, each Chief will certify as to the accuracy and completeness of the review. If there is a question regarding whether the conduct documented in the file is potentially exculpatory, the Chief should consult with the County Attorney.

The Attorney General's Office will provide a training for Chiefs and other law enforcement officials this Spring, and periodically thereafter to provide Chiefs guidance as to what constitutes potentially exculpatory evidence.

If the EES designation indicates that the material may be exculpatory in a particular case, the prosecutor will have to review the materials. In doing so, the prosecutor should analyze the nature of the conduct in question, and weigh its exculpatory nature in light of the officer's role in the investigation and trial, the nature of the case, the known defenses, and the recency or remoteness of the conduct, before making a final determination of whether the materials are potentially exculpatory in that particular case. What may be exculpatory in one criminal matter may be irrelevant in another.

The prosecutors who have reviewed the contents of an officer's personnel file shall maintain the confidentiality of the material reviewed. The production of the exculpatory materials should be done in conjunction with a protective order, as not all discoverable materials are necessarily admissible at trial. The discovery disclosure should outline the nature of the conduct and the finding of the agency. In certain cases, it may also be necessary to produce the underlying reports regarding the investigation. This should also be done in conjunction with a protective order. A sample protective order is attached.

When a determination is made to add an officer to the EES, the County Attorney and/or the Chief will notify that officer. Along with the notification, the officer will be given the opportunity to submit documentation for inclusion in his or her personnel file to indicate that he or she is challenging the disciplinary finding or the finding that the conduct is exculpatory. A notation will be made on the list if the matter is subject to on-going litigation.

---

[5] In most instances, actions or events that took place prior to an individual's employment in law enforcement will not constitute relevant exculpatory evidence. However, courts have held in unique circumstances that some pre-law enforcement conduct implicating credibility was exculpatory. Therefore, to fulfill their constitutional and ethical obligations, prosecutors may question Chiefs or officers about such matters and review the officer's personnel file to assure it does not contain relevant exculpatory evidence.

To the extent that institutional knowledge permits, an officer who was taken off the *Laurie* list because the conduct was more than ten years old should be placed back on the EES. Hereafter, no officer will be taken off the EES without the approval of the Attorney General or designee.

## V. The EES will be maintained and updated by the Attorney General or designee. The County Attorneys will maintain the information from the EES in their case management software.

The master EES will be maintained by the Attorney General's Office. The EES, and its updates, will be provided to the County Attorneys who will incorporate the information into their case management software, Prosecutor By Karpel (PBK). The County Attorneys will ensure that their PBK software properly notes officers in their county with exculpatory information in their files, and that it will be updated regularly for easy reference by their prosecutors.

Following receipt of the annual updates from the Chiefs, the County Attorneys will provide updates to the EES to the Attorney General's Office at least annually by no later than August 1st, and as needed, to enable the Attorney General's Office to maintain a master schedule. County Attorneys shall contact Chiefs who fail to provide their annual July 1st certification to assure the EES is complete. A process will be developed for local prosecutors to have access to the EES.

The EES is a confidential, attorney work product document, not subject to public disclosure. The EES contains information from personnel files which are protected from disclosure under RSA 91-A.

## VI. An officer can only be removed from the EES with the approval of the Attorney General or designee.

Given the breadth of the constitutional and ethical obligations to provide exculpatory evidence and the fact that the failure to comply with this obligation could result in overturning a criminal conviction or dismissal of a case, it should be the practice to err on the side of caution when determining whether an officer's designation on the EES should continue.

If it is determined the information in the personnel file would not be exculpatory in any case, the officer's name shall be removed from the list, but only with the approval of the Attorney General or designee.

## VII. The prosecutor must disclose directly to the defense any exculpatory material in a particular case for any potential witness in an upcoming trial.

If an officer is on the EES and is a *potential* witness in an upcoming trial, even if he or she is not testifying, and the prosecutor determines that information in the officer's personnel file is exculpatory, the prosecutor must provide this evidence directly to the

5

defense in compliance with the deadlines set forth by New Hampshire Rules of Criminal Procedure, or other deadline set by the trial court. As noted above, the disclosure of the materials should be the subject of a protective order limiting the dissemination of the information or materials.

### VIII. Judicial Review is reserved for instances in which the prosecutor cannot determine if the material is exculpatory in a particular case.

*In camera* review of a personnel file, in whole or in part, as deemed necessary in a particular case is only appropriate if there is a question as to whether the information in that portion of the personnel file is exculpatory, after the prosecutor has reviewed the file. These findings are case-specific, and therefore one judge's ruling that the information is not exculpatory nor discoverable, is not binding in any other case.

### IX. New procedures should be established by the heads of law enforcement agencies to track cases in which officers testify in the event that there is a post-conviction discovery of exculpatory evidence.

The current statute provides an ongoing duty of disclosure "that extends beyond a finding of guilt." RSA 105:13-b, I. Thus, law enforcement agencies should develop a procedure for tracking cases in which an officer testifies in order to comply with this obligation. It is currently difficult to identify cases in which a particular officer has testified, hampering efforts to make the post-conviction notifications directed by the statute.

### X. All law enforcement agencies should review and consider adopting the Model Policy for Brady Disclosure Requirements, adopted by the International Association of Chiefs of Police.

A copy of this policy is available on the International Association of Chiefs of Police website and is also attached. Adoption of this policy will ensure consistent procedures and standards throughout the State and provide guidance to the heads of law enforcement agencies in determining when certain conduct should be designated as potentially exculpatory.

If your department adopted the sample policy attached to the Heed Memorandum as a standard operating procedure, it should be rescinded and replaced with the Model Brady Policy that has been adapted for New Hampshire and which outlines procedures consistent with the new protocol, the court's holding in *Gantert v. City of Rochester,* 168 N.H. 640 (2016), and the revisions to RSA 105:13-b.

### XI. Process prior to placing an officer on the EES and production of personnel files pursuant to a court order.

The following paragraphs have been inserted into the Model Brady Policy that is attached to this Protocol. They outline the process departments should follow prior to

6

placing an officer on the EES and the process of producing personnel files pursuant to a court order.

  E. The Deputy Chief (Captain, Lieutenant, Internal Affairs Unit Supervisor, etc.) shall review all internal affairs investigation files including those investigations conducted by an immediate supervisor, to determine if the incident involved any conduct that could be considered potentially exculpatory evidence. If it does, he or she shall send a memo to the Chief outlining the circumstances.

  F. The Chief shall review the memo and determine if the incident constitutes potential exculpatory evidence. If the Chief concludes that the incident constitutes potentially exculpatory evidence, he or she shall notify the involved officer. If the officer disagrees with the Chief's finding, he or she may request a meeting with the Chief to present any specific facts or evidence that the officer believes will demonstrate that the incident does not constitute potentially exculpatory evidence. These facts or evidence may also be presented in writing which will be placed in the officer's personnel file. The Chief shall consider such facts and render a final decision in writing. In addition, if the officer is contesting the finding that he or she committed the conduct in question through arbitration or other litigation that should also be noted in the officer's personnel file.

  G. In the event the Chief has questions about this determination, he or she should notify the County Attorney. Upon review of the material, the County Attorney shall determine if it is potentially exculpatory evidence and whether the officer's name should be on the EES with that designation.

  H. Upon the Chief and/or County Attorney determination that the conduct reflected in the officer's personnel file is potentially exculpatory evidence, the officer shall be notified in writing.[6]

  I. If the final decision is that the incident in question constitutes potentially exculpatory evidence, a copy of that decision shall be placed in the officer's disciplinary file, as well as transmitted to the department's prosecutor/court liaison officer. The Chief shall also notify the County Attorney and the Attorney General or designee in writing. The notification shall include the officer's name and date of birth, along with a description of the conduct and a copy of the findings of the internal investigation or other relevant documents substantiating that conduct.

  J. The Chief shall instruct the officer in writing that in all criminal cases in which that officer may be a witness, the officer shall present a copy of the written notice that the officer's name is on the EES to the prosecutor.

  K. If the Chief determines that the incident constitutes potentially exculpatory evidence, the Chief shall then assess whether the conduct is so likely to affect the

---

[6] If the department is overseen by a Police Commission, the policy may provide that the officer shall have an opportunity to have his or her placement on the EES also reviewed by the Commission.

7

officer's ability to continue to perform the essential job functions of a police officer as to warrant dismissal from the department. In making such review, the Chief should consider not only the officer's present duty assignment, but also the officer's obligation to keep the peace and enforce the laws on a 24-hour basis, and the possibility that the officer may become a witness in a criminal case at any time.

     L. Any requests from defense counsel to produce an officer's personnel file shall be referred to the office of the Chief of Police. If the request is not made in the context of a specific criminal case, the Chief shall deny the request. If the request relates to a specific pending criminal case in which the officer is a witness, and the officer's conduct reflected in the file has not already been determined to be potentially exculpatory evidence, the Chief shall notify the prosecutor of the request and provide the file for the prosecutor's review. If a determination is made by the prosecutor that the file does not contain any potentially exculpatory evidence, the requesting party will be directed to obtain a court order for the portion of the file they can establish is likely to contain potentially exculpatory evidence.

     Upon receipt of a written court order, the file will be made available to the trial judge for an *in camera* review. Upon receipt of such an order, the file shall be copied and the copies personally delivered to the court, and a receipt obtained for the same. The file shall be accompanied by a letter from the Chief setting forth that the information is being forwarded for purposes of a review for potentially exculpatory evidence pursuant to RSA 105:13-b, III, and requesting that the file only be disclosed to the extent required by law, and only in the context of the specific case for which the *in camera* review is being conducted. The letter shall also request that the file be returned to the department or shredded when the court is through with it, or retained under seal in the court file if necessary for appeal purposes.

## ATTORNEY GENERAL
## DEPARTMENT OF JUSTICE

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397

JOSEPH A. FOSTER
ATTORNEY GENERAL



ANN M. RICE
DEPUTY ATTORNEY GENERAL

### EXCULPATORY EVIDENCE PROTOCOL SCHEDULE- 2017 CERTIFICATE OF COMPLIANCE- DUE SEPTEMBER 1, 2017

**NOTE**: An annual Exculpatory Evidence Protocol and Schedule certificate of compliance must be submitted in accordance with the Attorney General's Exculpatory Evidence Protocol and Schedule Memorandum on or before July 1 of each calendar year.

I hereby certify that the personnel files of each law enforcement officer who was listed as sworn full or part-time with this law enforcement agency during the past year have been reviewed by the individual listed below for potential exculpatory evidence in compliance with the guidance provided by the Attorney General's Memorandum. The personnel files reviewed included the full employment record of each officer, including but not limited to, internal investigation materials, disciplinary files, background and hiring documents (to include their prior employment file if prior employment was in law enforcement), and their medical and mental health documents.

I have sought advice from the County Attorney and the Attorney General when assessing whether conduct should be considered potentially exculpatory. For any officer who had potentially exculpatory evidence in their personnel file for matters arising after the individual became a law enforcement officer, I have notified both the County Attorney and the Attorney General to place the officer's name on the Exculpatory Evidence Schedule (EES). I have notified every officer whose name was placed on the EES of such placement in writing.

_____        _____
Signature of reviewing Officer          Title of Authority

_____        _____
Signature of Chief Law Enforcement      Title of Authority
Officer

_____        _____
Date                                    Law Enforcement Agency

## ATTORNEY GENERAL
## DEPARTMENT OF JUSTICE

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397

JOSEPH A. FOSTER
ATTORNEY GENERAL



ANN M. RICE
DEPUTY ATTORNEY GENERAL

### EXCULPATORY EVIDENCE PROTOCOL SCHEDULE-ANNUAL CERTIFICATE OF COMPLIANCE

**NOTE**: An annual Exculpatory Evidence Protocol and Schedule certificate of compliance must be submitted in accordance with the Attorney General's Exculpatory Evidence Protocol and Schedule Memorandum on or before July 1 of each calendar year.

I hereby certify that the personnel files of each law enforcement officer hired with this law enforcement agency during the past year have been reviewed by the individual listed below for potential exculpatory evidence in compliance with the guidance provided by the Attorney General's Memorandum. The personnel files reviewed included the full employment record of the officer, including but not limited to, internal investigation materials, disciplinary files, background and hiring documents (to include their prior employment file if prior employment was in law enforcement), and their medical and mental health documents. In addition, for any officer with new complaints filed in this calendar year or disciplined by this department in the past year, their file was reviewed in full again in compliance with the guidance provided by the Attorney General's Memorandum.

I have sought advice from the County Attorney and the Attorney General when assessing whether conduct should be considered potentially exculpatory. For any officer who had potentially exculpatory evidence in their personnel file for matters arising after the individual became a law enforcement officer, I have notified both the County Attorney and the Attorney General to place the officer's name on the Exculpatory Evidence Schedule (EES). I have notified every officer whose name was placed on the EES of such placement in writing.

_____      _____
Signature of reviewing Officer      Title of Authority

_____      _____
Signature of Chief Law Enforcement      Title of Authority
Officer

_____      _____
Date      Law Enforcement Agency

THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT

_____, SS.                                                                                      _____TERM, 2017

** FILED UNDER SEAL **

**State of New Hampshire**

v.

_____

**MOTION FOR A PROTECTIVE ORDER OF DISCOVERY MATERIALS**

NOW COMES the State of New Hampshire, by and through the Office of the Attorney General and undersigned counsel, and hereby request that the Court issue a Protective Order of Discovery Materials to be provided to defense counsel in the above-captioned matter that include materials from a law enforcement officer's personnel file. In further support of this motion, the State says as follows:

1. Pursuant to the State's obligation to provide exculpatory evidence to the defense, the State has obtained potentially exculpatory evidence from the _____ Police Department consisting of materials from Officer _____'s personnel file. Officer _____ may be called as a witness for the State in this matter.

2. While the State acknowledges that these materials may be potentially exculpatory, the State does not concede that these materials may be used in open court for impeachment of Officer _____. This will be the subject of a later Motion in *Limine* in this matter.

3. In the interim, the State is asking that defense counsel be prohibited from discussing these materials or providing a copy of the materials from Officer _____'s

personnel file that will be produced in discovery, to anyone other than defense counsel and their investigator(s).

4. The Court has the authority to issue this proposed protective order. Indeed, it is well-established that the Court has the inherent authority to exercise its sound discretion in matters concerning pretrial discovery. *See State v. Emery*, 152 N.H. 783, 789 (2005); *State v. Smalley*, 148 N.H. 66, 69 (2002); *State v. Delong*, 136 N.H. 707, 709 (1993). Pursuant to Rule 12 of the new Hampshire Rules of Criminal Procedure, therefore, the Court may at any time restrict or even deny discovery "[u]pon a sufficient showing of good cause." *See* N.H. R. Crim. P. 12(b)(8).

5. Law enforcement personnel files are considered confidential with the exception of production for discovery in an on-going criminal matter. *See* RSA 105:13-b. The proposed protective order is necessary to ensure the confidentiality of the officer's personnel records while meeting the State's competing interest in providing potentially exculpatory evidence in a criminal matter, enabling the defendant and his counsel to review complete discovery and prepare for trial. *See generally, State v. Laurie*, 139 N.H. 325 (1995); *N.H.R.Prof.C.* 3.8(d).

6. Counsel for the defendant, attorney _____, ASSENTS/OBJECTS to the proposed protective order attached hereto.

WHEREFORE, the State respectfully asks that the Court:

A. Grant this motion;

B. Approve the attached proposed protective order; and

C. Grant any additional relief that the Court deems just and proper.


Respectfully submitted,

THE STATE OF NEW HAMPSHIRE

By its attorneys,


DATE                                    _____

                                        Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on _____, I sent a true copy of the foregoing motion and all attachments by first-class mail to attorneys _____.

_____

THE STATE OF NEW HAMPSHIRE
SUPERIOR COURT

_____SS.                                                     TERM,_____

\*\* UNDER SEAL \*\*

**State of New Hampshire**

v.

_____

**[PROPOSED]**
**PROTECTIVE ORDER**

The Court hereby enters the following Order with respect to discovery in the above-captioned matter:

1.  Pursuant to the State's obligation to provide potentially exculpatory evidence and the provisions of RSA 105:13-b, the State has reviewed the confidential police personnel file of Officer _____ for relevant and potentially exculpatory evidence in this matter.

2.  Following its review, the State has determined that certain documents contained in Officer _____'s personnel file may be potentially exculpatory in this matter. The documents will be provided to the defendant's counsel under this protective order.

3.  Defense counsel is prohibited from sharing or further disseminating these confidential documents and the confidential information contained therein with anyone other than their client and their staff.

4.  If the defendant seeks to admit any of the documents or information contained within these materials, for substantive or impeachment purposes, it must first file a motion or pleading referencing the documents or the information under seal. Only upon this Court's further Order will any of the materials contained within the personnel file be discussed in open court or used in this matter as evidence.

So Ordered.

_____
Date                                                                                            Presiding Justice