UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Doe

    v.                                                             Civil No. 1:21-cv-944-JL
                                                                                  Opinion No. 2022 DNH 075

Town of Lisbon, et al.

**MEMORANDUM ORDER**

The court has before it proposed intervenor, UCLA School of Law Professor Eugene Volokh's, motion to intervene[1] and motion to unseal and oppose pseudonymity.[2] Professor Volokh opposes the plaintiff's continued pseudonymity because he would like to more effectively write about the case in his academic work and on his blog, "The Volokh Conspiracy."[3] Plaintiff John Doe objects to both motions, while the defendants did not respond to, and thus take no position on, the motions. After considering the written submissions and hearing oral argument, the court grants Professor Volokh's motion to intervene and denies his motion to unseal and oppose pseudonymity.

**I.  Background**

Through this lawsuit, the plaintiff – a former police officer for the Town of Lisbon – seeks removal from New Hampshire's "Exculpatory Evidence Schedule." Broadly speaking, the EES is "a list of police officers who have engaged in misconduct reflecting negatively on their credibility or trustworthiness." New Hampshire Ctr. for Pub. Int. Journalism v. New Hampshire

---

[1] Doc. no. 26.

[2] Doc. no. 27.

[3] See https://reason.com/volokh/ (last accessed June 20, 2022).

Dep't of Just., 173 N.H. 648, 651 (2020).[4] The New Hampshire Department of Justice maintains the EES and, subject to the provisions of a recently enacted New Hampshire statute (RSA 105:13-d, effective Sept. 24, 2021), the EES "shall be a public record" under New Hampshire's right-to-know laws. The NHDOJ publishes the EES on its website.[5] If an officer files a timely challenge to his or her placement on the EES, however, the officer's name and corresponding information will be non-public and not subject to disclosure under the right-to-know law until the challenge is complete and all appeals are exhausted. If the officer's challenge is successful, his or her name and corresponding information will remain non-public. See generally RSA 105:13-d. As a result, on the current EES, officers with pending challenges have their names and corresponding information (such as the reporting police department, date of incident, date of notification, and category of infraction), as well as their case information, redacted. If the officer loses his challenge to placement on the EES, his name and corresponding information are made public. It is unclear from the statute, the parties' submissions, and other publicly available information whether the NHDOJ maintains an unredacted version of the EES (including the names and information of officers with pending challenges) and if so, who has access to it within the agency.

The plaintiff initially sued the Town in New Hampshire Superior Court, but after the Town timely and properly removed the case to this court, the plaintiff amended his complaint to

---

[4] The EES is often still referred to as the "Laurie List," since it is derived from State v. Laurie, 139 N.H. 325 (1995).

[5] See Exculpatory Evidence Schedule, available at https://www.doj.nh.gov/exculpatory-evidence-schedule/index.htm (last accessed June 15, 2022).

add the NHDOJ as a defendant.[6]  The plaintiff contends that the Town lacked a factual basis to place him on the EES, violated his procedural and substantive due process rights when investigating the underlying conduct that led to his placement on the EES, and, even if the factual findings that led to his placement on the EES were sustained, his alleged behavior was not potentially exculpatory and did not justify placement on the EES.

Following the NHDOJ's motion to dismiss, the plaintiff's motion for voluntary dismissal, a potential consolidation order, and oral argument on these preliminary motions and issues, the parties filed a stipulation addressing how they wished to proceed.[7]  The court approved the stipulation, effectuating remand of all claims against the NHDOJ and certain claims for injunctive relief against the Town, as well as consolidation with the plaintiff's related case.[8]

After remand, the following claims for damages against the Town remain before this court:  (1) violation of the plaintiff's procedural due process rights under the United States Constitution and New Hampshire Constitution; (2) violation of his substantive due process rights under both constitutions; and (3) "libel, slander, and damage to reputation" and an award of attorneys' fees.[9]

---

[6] See Notice of Removal (doc. no. 1) and State Court Complaint (doc. no. 1-2); First Amended Complaint (doc. no. 6).  After the NHDOJ moved to dismiss, the plaintiff filed a related case in state court, this time naming both the Town and NHDOJ as defendants.  The Town again removed that case to this court.  See D.N.H. Docket No. 22-cv-43-SM.

[7] Doc. no. 25.

[8] See Consolidation Order (doc. no. 28); Endorsed Order of April 20, 2022; Remand Order (doc. no. 31).

[9] Consolidated Complaint (doc. no. 29-1), at 9-10.  The aspects of the procedural and substantive due process claims seeking injunctive relief against the Town and NHDOJ have been remanded to state court by agreement of the parties.

The parties agreed to allow the plaintiff to proceed pseudonymously, both in state court and in this court. While Grafton County Superior Court Judge MacLeod granted the plaintiff's motion to seal the docket and all pleadings in the state court matter, the state court record is not sealed on this court's docket. See doc. no. 8 (certified copy of state court record from state case no. 215-2021-cv-00252). Nor is this court's docket or any of the operative pleadings sealed. The only document that is currently sealed is a prior version of a complaint that inadvertently included the plaintiff's last name on one page. See doc. no. 1-2.

## II.    Analysis

The court addresses Professor Volokh's motions in turn, beginning with his request to intervene.

### A.    Permissive intervention

Professor Volokh moves to intervene "for the limited purpose of moving to unseal the state court record and moving to oppose pseudonymity."[10] Permissive intervention "is an effective mechanism for third-party claims of access to information generated through judicial proceedings." Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 783 (1st Cir. 1988); see also R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 11 (1st Cir. 2009) (noting that "permissive intervention is the procedurally correct vehicle" for a third-party to challenge a sealing order or oppose pseudonymity). The court has broad discretion to allow "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

---

[10] Doc. no. 26-1; Doc. no. 34.

When, however, "the party moving to intervene does so for a limited purpose and does not seek to become a party to the litigation, the nexus-of-fact-or-law requirement is loosened, and '[s]pecificity, e.g., that the intervenors' claim involve the same legal theory that was raised in the main action, is not required.'" Does 1-6 v. Mills, No. 1:21-CV-00242-JDL, 2021 WL 6197377, at *1 (D. Me. Dec. 30, 2021) (Levy, J.) (quoting Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (3d Cir. 1994) (alterations omitted)). For example, where, as here, "a party seeks to intervene in a case for the limited purpose of unsealing judicial records, most circuits have found that 'there is no reason to require such a strong nexus of fact or law.'" Does 1-6, 2021 WL 6197377, at *1 (quoting Flynt v. Lombardi, 782 F.3d 963, 967 (8th Cir. 2015)). The court also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 40 (1st Cir. 2020) (quoting Fed. R. Civ. P. 24(b)(3)), as well as "whether the 'putative intervenor's interest is adequately represented by an existing party.'" Massachusetts v. U.S. Dep't of Health & Hum. Servs., 289 F. Supp. 3d 259, 265 (D. Mass. 2018) (quoting KG Urban Enters., LLC v. Patrick, 293 F.R.D. 42, 49 (D. Mass. 2013)).

Professor Volokh has standing to intervene and seeks intervention for a limited, permissible purpose. Allowing him to intervene will not require adding claims, defenses, parties, or new pleadings. See Fed R. Civ. P. 24(c). His request is timely and comes in the preliminary stages of the case. Thus, it will not delay the adjudication of the underlying claims. Moreover, the existing parties will not adequately represent Professor Volokh's interests because the

5

plaintiff opposes his request to unseal and the defendants take no position on the request. The court therefore grants Professor Volokh's motion to intervene.[11]

### B. Pseudonymity

Having granted Professor Volokh's motion for limited intervention, the court turns to his motion to unseal and oppose pseudonymity. Because, as noted above, the sealed records in this case are limited to one document, the heart of Professor Volokh's request is his opposition to pseudonymity. Professor Volokh opposes continued pseudonymous litigation based on the presumption of open court records and his common law and First Amendment rights of access to court records.

The parties appear to have agreed at the state court level to let the plaintiff proceed pseudonymously and continued that agreement once the case was removed to this court. As Professor Volokh correctly points out, however, this court is not bound by state court orders when ruling on a procedural motion governed by federal law, and it may dissolve or modify such state court orders. See Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Local No. 70 of Alameda Cnty., 415 U.S. 423, 437 (1974) (explaining that "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal"); 28 U.S.C. § 1450

---

[11] Plaintiff effectively concedes that Professor Volokh satisfies the requirements of Rule 24(b), but argues that the court should deny intervention because Professor Volokh "cannot ultimately receive any relief." Obj. to Mot. to Intervene (doc. no. 32) at 2 (citing Turner v. Cincinnati Ins. Co., 9 F.4th 300, 317 (5th Cir. 2021)). In Turner, however, the district court denied a third party's motion to intervene because there was "no relief for [him] to seek," not receive. Turner, 9 F.4th at 317 (emphasis added). That was more akin to a denial based on lack of standing to intervene. Here, however, Professor Volokh plainly has standing to move to unseal court records and oppose pseudonymity. And even if the court ultimately denies Professor Volokh's motion to unseal, that is not a valid basis to deny intervention because he may wish to re-assert his challenge to sealing and pseudonymity at a later stage in the case and will need to maintain intervenor status to seek that relief.

("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."). Accordingly, the state court sealing order does not control here and the court independently analyzes whether the plaintiff should be allowed to continue pseudonymously.

Federal cases must ordinarily proceed in the names of the parties. See Fed. R. Civ. P. 10(a) & 17(a)(1). The Federal Rules of Civil Procedure do not provide a means for proceeding anonymously or through a pseudonym. See Doe v. Trs. of Dartmouth Coll., No. 18-cv-040-LM, 2018 WL 2048385, at *2 (D.N.H. May 2, 2018) (McCafferty, C.J.). In addition, "[u]nder the common law, there is a long-standing presumption of public access to judicial records." In re Gitto Global Corp., 422 F.3d 1, 6 (1st Cir. 2005). Nevertheless, while "the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." Siedle v. Putnam Invs., Inc., 147 F.3d 7, 10 (1st Cir. 1998). To that end, "courts have permitted parties to proceed under a pseudonym and to seal documents that reveal their true identities when extraordinary circumstances justify that restriction." Doe v. Trs. of Dartmouth Coll., No. 18-CV-690-JD, 2018 WL 5801532, at *1 (D.N.H. Nov. 2, 2018) (DiClerico, J.); see also F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412 (1st Cir. 1987) (describing test as one requiring a showing of "exceptional circumstances" to "overbear the public's right of access"). The court "must carefully balance the competing interests that are at stake in the particular case" when deciding whether to allow pseudonymous litigation and "enjoys considerable leeway in making decisions of this sort." Sieldle, 147 F.3d at 10.

The First Circuit Court of Appeals has not adopted a standard for deciding whether to allow pseudonymous litigation. Judges within this court have recently utilized some

combination of similar factors from the Second and Third Circuit Courts of Appeals. See Doe, 2018 WL 2048385, at *5 (applying the Third Circuit test); Verogna v. Twitter, Inc., No. 20-CV-536-SM, 2020 WL 5077094, at *2 (D.N.H. Aug. 27, 2020) (McAuliffe, J.) (applying the Third Circuit test at parties' request); Doe, 2018 WL 5801532, at *3 (applying Second Circuit test but referencing Third Circuit factors "when appropriate"); see also Does 1-6 v. Mills, No. 1:21-CV-00242-JDL, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021) (Levy, C.J.) (using the Third Circuit test).[12]

The court agrees with Chief Judge McCafferty that the "Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records, insofar as the district court must proceed from the presumption of an open litigation process and may only limit such access in compelling circumstances" and uses that test here. Doe, 2018 WL 2048385, at *5. In Doe v. Megless, the Third Circuit endorsed nine factors courts should weigh in deciding this question. Six factors favoring pseudonymity are:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

Doe v. Megless, 654 F.3d 404, 409 (3d Cir. 2011) (citation omitted). On the other hand, the factors favoring disclosure are:

> [7] the universal level of public interest in access to the identities of litigants; [8] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

---

[12] Both the plaintiff and Professor Volokh cite the Third Circuit factors in their briefing.

8

>[9] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

Id.

The plaintiff argues that the court need not address the Megless factors because RSA 105:3-d provides him with an unconditional right to anonymity in this case, and Professor Volokh does not challenge the constitutionality of that statute. Professor Volokh argues that the state statute does not control because "federal law governs motions to seal records in federal court."[13] Neither side is entirely correct. The statute is not dispositive of the pseudonymity question, but the court also cannot ignore it. Instead, the court appropriately considers the statute when weighing the Megless factors.

Two factors – whether the motives of either the pseudonymous plaintiff or party opposing pseudonymity are illegitimate (factors six and nine, as listed above) – are a wash. Neither side has presented evidence or even suggested that the other's motives are illegitimate. The court next addresses the remaining factors, beginning with those that traditionally favor pseudonymity.

The first factor – the extent to which the plaintiff's identity has been kept confidential – favors pseudonymity. The plaintiff has maintained anonymity from the outset of this case and his identifying information is redacted on the publicly available version of the EES, as required by RSA 105:13-d. Moreover, nothing in the record suggests that the plaintiff's identity, as it relates to his presence on the EES, is otherwise publicly known.

The second factor – the bases upon which disclosure is feared or sought to be avoided – also favors pseudonymity. While the "mere fact that judicial records may reveal potentially

---

[13] Reply (doc. no. 35) at 2 (quoting Haynes v. Haggerty, No. 19-cv-00164, 2020 WL 2557230, at *5 (D. Vt. May 19, 2020)).

embarrassing information is not in itself sufficient reason to block public access," here the plaintiff contends that he will suffer more than embarrassment if his identity is disclosed. Siedle, 147 F.3d at 10. Specifically, the plaintiff argues that if he must reveal his identity, he will experience severe reputational damage and impairment of future career prospects, regardless of the outcome of the litigation. The plaintiff's concerns are well founded.

"[W]here the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," pseudonymity may be appropriate. Verogna, 2020 WL 5077094, at *2 (quoting Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992)) (emphasis supplied). If the plaintiff must challenge his placement on the EES in his own name and he ultimately prevails and is removed from the EES, the public will still know that he was placed on the EES initially. The public could suspect, or conclude, that he deserved to be on the list, even if he ultimately proves otherwise. Simply being listed among other dishonest or untrustworthy police officers risks potential, irreversible harms to a person's career prospects, whether that person wants to work in law enforcement again (as the plaintiff here does) or in other fields of employment. Accordingly, as in Doe, the plaintiff has a "reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm . . . and will defeat the very purpose of this litigation." 2018 WL 2048385, at *6.

Professor Volokh argues that allowing pseudonymous litigation here would create an exception that could swallow the rule of open litigation because this case resembles a "garden-variety" employment dispute or libel claim. Although Professor Volokh is correct that the plaintiff asserts a libel claim against his former employer and certain aspects of his other claims resemble a dispute between employer and former employee, the plaintiff is not so much challenging his termination as he is his placement on the EES. He also does not seek job

10

reinstatement, back pay, front pay, or other remedies typically associated with employment cases. This litigation (both the federal and state court aspects) derives from RSA 105:13-d, a unique New Hampshire statute establishing a process and remedy for challenging placement on the EES.

Indeed, the plaintiff's very reason for bringing this suit is to challenge his placement on the EES and ultimately attain removal therefrom. The plaintiff's status on the EES therefore makes this an atypical case. And while the aspect of the plaintiff's claims which seek the equitable remedy of removal from the EES have been remanded to state court, the state court case and this case are operating in tandem. Thus, the impact of disclosing the plaintiff's identity in this case will be felt just as strongly in the state court case and could have the same damaging consequences the statute was enacted to prevent.

The third factor – the magnitude of the public interest in maintaining the confidentiality of the plaintiff's identity – similarly favors pseudonymity. This factor asks, "if this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" Megless, 654 F.3d at 410. The answer appears to be "yes." If law enforcement officers know that the statutorily afforded confidentiality can be easily overridden, such that they must litigate cases challenging placement on the EES in their real name, it logically follows that fewer are likely to file such cases and expend resources attempting to clear their names.

In addition, RSA 105:13-d evidences a strong public interest within New Hampshire in maintaining the confidentiality of police officers' identities during pending legal challenges to placement on the EES. The statute provides that the individual officer's name and "corresponding information on" the EES shall be published to the public, "except for any

11

individual with a pending legal action regarding the officer's placement on the" EES. RSA 105:13-d, II(d). Once the court issues a final order in the case, and the parties exhaust their appellate rights, the officer's name and corresponding information will become public unless the court finds that "the underlying misconduct is not potentially exculpatory" or "that the law enforcement agency erred in recommending that the officer be placed on the" EES. Id. at II(d)(1) and (2). The statute also provides that if "the court issues an order finding that an officer did not receive adequate due process and remands the matter back to the law enforcement agency for further due process proceedings, then the officer's name shall not be publicly disclosed until the due process ordered is finally exhausted." Id. at II(d). In other words, if the officer prevails, his identity is never disclosed. Furthermore, the statute provides that nothing therein "shall preclude the court from taking any necessary steps to protect the anonymity of the officer before entry of a final order." RSA 105:13-d, V. The statute therefore reflects the public's interest in protecting the anonymity of officers with pending EES challenges, like the plaintiff here.[14]

To hold otherwise and allow disclosure of the plaintiff's identity would render many of the statute's key provisions meaningless. If any interested third party could intervene in an EES challenge and demand disclosure of the affected officer's name, the anonymity provisions would have no effect and the statute as a whole would be severely weakened.[15] See Tower v. Leslie-Brown, 167 F. Supp. 2d 399, 405 (D. Me. 2001) ("That the underlying child protective

---

[14] Indeed, as of April 1, 2022, this lawsuit appears to be the only EES challenge pending in Federal Court and the dozens of other pending challenges in state court are "entirely under seal." See https://www.doj.nh.gov/exculpatory-evidence-schedule/documents/20220401-ees-compliance-report.pdf.

[15] Without an anonymous challenge procedure, police department leadership may be incentivized to place disgruntled or whistleblowing officers on the EES for inappropriate or even frivolous reasons because of the damaging reputational effects that result from being publicly named on the list.

proceedings in this case are sealed by state statute counsels in favor of sealing the record in this federal action. Although the statutes closing the state proceedings do not govern this civil rights action in federal court, they do demonstrate a legislative judgment that the State of Maine has an interest in maintaining the confidentiality of child protective proceedings. . . . If the Court were to allow the parties to import confidential documents into federal court and thereby make them public, it would seriously undermine the state's policy.") (emphasis added). Professor Volokh's interest in learning the plaintiff's real name so he can, in his words, "effectively" research the plaintiff's "past cases or controversies" and gain "important context" about the case[16] therefore does not outweigh the strong public interest in preserving at least temporary anonymity reflected in RSA 105:13-d.

Professor Volokh cites no decisions where a court required disclosure under similar circumstances. The case he considers the closest to this one – Coe v. U.S. Dist. Ct. for Dist. of Colorado, 676 F.2d 411 (10th Cir. 1982) – is readily distinguishable. There, the plaintiff moved for an injunction requiring the Colorado Board of Medicine to conduct his disciplinary hearing in secret. The court denied the motion. Importantly, Colorado, unlike New Hampshire, had not enacted a directly applicable statutory anonymity provision to protect petitioners. The court observed that "[n]o licensee has a 'right' to a secret, closed nonpublic hearing before the Board." Id. at 417. It was instead a "matter within the Board's statutory authority, subject to its sound discretion in the balancing of public and private interests." Id. Here, by contrast, the statute requires that those challenging placement on the EES are permitted to remain anonymous during their challenge.

---

[16] See doc. no. 27-1 at 1, 5. Professor Volokh's effective reporting concerns are somewhat alleviated by the fact that the docket and all of the operative pleadings (which detail the underlying dispute) are publicly available.

13

The fourth factor – whether, because of the legal nature of the issues presented, there is an atypically weak public interest in knowing the litigant's identities – favors disclosure. This case does not involve "purely" legal issues. Determining if the plaintiff was justifiably placed on the EES and whether the alleged underlying misconduct was potentially exculpatory will require factfinding.

The fifth factor – whether "the litigant [will] sacrifice a potentially valid claim simply to preserve [his] anonymity," Megless, 654 F.3d at 410 – favors pseudonymity. Plaintiff's counsel indicated at oral argument that his client likely would not prosecute this lawsuit in this court if he must do so in his own name. This factor accordingly weighs in the plaintiff's favor.

The final two factors favor disclosure, but do not overcome the countervailing factors discussed above. The seventh – the universal level of public interest in access to the identities of litigants – is self-evident and supports public disclosure of court records, including litigants' true names. The eighth – whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained – also supports disclosure, but not as strongly as Professor Volokh contends. While the court agrees that there is a strong interest in holding public officials like police officers accountable, this is not a suit to hold the plaintiff accountable. The plaintiff has already been held accountable; Lisbon PD terminated him and placed him on the EES. Also, if his challenge fails, he will remain on the EES and the public will learn his identity, resulting in further public accountability. If anything, in an EES challenge, the plaintiff is seeking to hold his former department accountable for potentially placing him on the EES without justification. Contrast that to a § 1983 suit where a citizen seeks to hold a police officer accountable for some unconstitutional conduct. In such a

suit, unlike here, the interest in publicly identifying the officer-defendant is especially strong. See Pearson v. Callahan, 555 U.S. 223, 231 (2009) (noting that federal civil rights litigation advances the "important" interest of "need[ing] to hold public officials accountable when they exercise power irresponsibly").

The balance of factors thus weighs in favor of allowing the plaintiff to continue proceeding under a pseudonym. The above-described considerations – in particular, the plaintiff's reasonable concern that he will be subjected to severe reputational damage absent anonymity, regardless of the outcome of this litigation, and the strong public interest (as reflected in RSA 105:13-d) that officers challenging placement on the EES should be allowed to maintain their anonymity during such challenges – outweigh the interests favoring public identification and the presumption of open court proceedings.

This ruling is without prejudice to Professor Volokh, any other party, or the court revisiting the propriety of pseudonymous litigation at a later stage in the litigation. See Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000) (court should evaluate use of pseudonym "at each stage of the proceedings"). The court's order is therefore "limited to pretrial proceedings." Doe, 2018 WL 2048385, at *7.

### III. Conclusion

For the reasons set forth above, Professor Volokh's motion to intervene[17] is GRANTED and his motion to unseal and oppose pseudonymity[18] is DENIED without prejudice.

---

[17] Doc. no. 26.

[18] Doc. no. 27.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: June 23, 2022

cc: Christopher T. Meier, Esq.
Naomi N. Butterfield, Esq.
Samuel H. Martin, Esq.
Debra Weiss Ford, Esq.

16