**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 10-17-2022**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
        JOHN DOE                  *
                                  *    21-cv-944-JL
             v.                   *    June 15, 2022
                                  *    10:05 a.m.
TOWN OF LISBON AND NEW HAMPSHIRE  *
DEPARTMENT OF JUSTICE             *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JOSEPH N. LAPLANTE

APPEARANCES:


For the Plaintiffs:        Christopher T. Meier, Esq.
                           Cooper, Cargill, Chant, PA



For the Defendant:         Samuel H. Martin, Esq.
                           Jackson Lewis, PC



Intervenor:                Eugene Volokh
                           UCLA School of Law



Court Reporter:            Susan M. Bateman, RPR, CRR
                           Official Court Reporter
                           United States District Court
                           55 Pleasant Street
                           Concord, NH 03301
                           (603) 225-1453

```
 1                   P R O C E E D I N G S
 2             THE CLERK:  The Court is now in session and has
 3   before it for consideration a motion hearing in 21-cv-944-JL,
 4   Doe versus Town of Lisbon, New Hampshire.
 5             Will counsel please identify yourself for the
 6   record starting with plaintiff's counsel?
 7             MR. MEIER:  Good morning, your Honor.
 8             Chris Meier for the plaintiff.
 9             MR. MARTIN:  Good morning, your Honor.
10             Sam Martin for the town.
11             THE COURT:  Good morning.
12             MR. VOLOKH:  Good morning, your Honor.
13             Eugene Volokh, pro se movant.
14             THE COURT:  Good morning and welcome.
15             Professor Volokh, where are you sitting right now?
16             MR. VOLOKH:  I am sitting in lovely Los Angeles,
17   Studio City if you know the area, in my little office.
18             THE COURT:  So it's early for you.
19             MR. VOLOKH:  Well, any time is the right time to
20   discuss interesting issues such as this.
21             THE COURT:  Of course, yeah.  Understood.
22             All right.  Let's get to it then.
23             I'll let you have at it in terms of intervention,
24   but I really don't think that the intervention question is a
25   very close one.  I plan on allowing that.
```

1          So if you want to get to the merits of your motion

2    to unseal basically to eliminate the pseudonymity, that's

3    probably a good place to start.

4          MR. VOLOKH:  Yes, your Honor.  Thank you very much.

5          So I'm moving to unseal the state court record that

6    has been filed under seal and also to oppose pseudonymity in

7    this case.  The two of course are closely related.

8          The state court record contains information about

9    the plaintiff's identity, I believe, and pseudonymity has

10   always been understood as a kind of sealing.  By itself it is

11   basically the concealment from the public and denial of the

12   public right of access to one piece of information but a very

13   important piece of information, the identity of the plaintiff.

14         And that undermines -- that kind of pseudonymity

15   undermines the ability of the public to supervise what is

16   going on in the court system, which is the purpose of the

17   right of access, both the First Amendment and the common law

18   right of access.

19         So, for example, the journalist faced with a

20   pseudonymous complaint can't really do the legwork to figure

21   out what was actually going on, can't write the rich detailed

22   story with the back story that's much better for public

23   information than let's say just the story that says, well,

24   there's an anonymous complaint that's been filed and here's

25   what we call secret.

1       And under fairly well-settled -- I don't want to

2  exaggerate this because the cases are something of a mess, but

3  under fairly well-settled law related to pseudonymity,

4  pseudonymity is not allowed simply to protect a person's

5  reputation.  It's perfectly understandable that a plaintiff or

6  for that matter many defendants wouldn't want to litigate

7  pseudonymously because they don't want the underlying

8  allegations in the case aired.

9       But routinely in case after case, whether it's a

10  libel case or a sexual assault case or a professional

11  discipline case, these decisions have to be made in public

12  with the public knowing the identities of the parties

13  precisely in order to promote public supervision.

14       Probably the closest case on point is the Coe case

15  from the Tenth Circuit which involved a pseudonymous attempt

16  to challenge a medical disciplinary procedure also on

17  procedural due process grounds, and the Court said, no, no

18  pseudonymity there.  This is --

19       THE COURT:  Let me ask you about that since you

20  mention it.

21       To me that might be one of the problems though with

22  your motion because I think I agree that that's probably the

23  closest case here, but it's different in the sense that --

24  this is a cause of action created by statute.  Like in that

25  way it's not really just a challenge to some sort of

1    discipline or some sort of employment condition.  This is a

2    cause of action created by statute for people for law

3    enforcement officials who believe they were wrongfully

4    included on a list of great importance to the public.  I mean,

5    not just the criminal bar, of course criminal bar in the court

6    system, but the public, as you point out.  And doesn't that

7    make it different, the fact that this is a statutorily created

8    cause of action that is meant to protect these plaintiffs if

9    they are wrongfully included on the list?  If they're not

10    wrongfully included, of course it's going to be -- the result

11    of this case is going to immediately result in the exposure of

12    their names that will be revealed.

13            What do you say about that?

14            MR. VOLOKH:  Your Honor, that might be the case,

15    although I'm not sure, as to Counts 3 and 4 which were brought

16    as I understand it under the statutory cause of action, but I

17    believe that those counts have now been remanded to state

18    court.

19            What remains, as I understand it, are Counts 1, 2,

20    5 and 6.

21            1 and 2 are basically procedural due process and

22    substantive due process claims.  They're much like the claim

23    in Coe.  It's much like a very common claim, I have been

24    mistreated by my government in a way that violates my

25    constitutional rights.  Very similar to a false arrest claim

1    where somebody says I was wrongly arrested, but I don't want

2    people to know that I've been arrested so please litigate it

3    confidentially.  That's not allowed.

4         Likewise, Count 5 is a libel claim.  Again many,

5    many libel plaintiffs would very much like to sue

6    pseudonymously because suing under their own name will just

7    further remind people about the libelous information, but that

8    is generally not allowed.

9         And Count 6 is an attorney's fees claim which I

10   think is probably derivative of the others.  So --

11        THE COURT:  Keep going.

12        MR. VOLOKH:  So my sense is that the plaintiff

13   could have just sued under the state cause of action and as a

14   result would have been in state court.  There would have been

15   no federal jurisdiction.

16        But the plaintiff chose to add federal causes of

17   action which bring them to federal court.  By the way, I think

18   under New Hampshire law -- and some may have their own right

19   of access, but at least it's perhaps less strong and a body of

20   case law supporting the right of access than in federal court.

21   So he chose to bring federal claims.  This brings it into

22   federal court with the federal rules of procedure and the

23   federal common law that generally oppose pseudonymity.

24        I will also say a state could, if it wanted to, set

25   up an administrative procedure for dealing with certain sorts

1  of things, and those procedures could very well be entirely

2  confidential.  But here the state chose to bring it into

3  court, and then the plaintiff chose to do something, including

4  federal causes of action which would understandably bring it

5  into federal court.  That's why we're here now, and that's why

6  I think this case -- not the remanded portions of the case,

7  but this case remains very much like Coe.

8         THE COURT:  A couple of things, I don't think

9  they're dispositive of your motion, but I do want to make

10 clear because I noticed this in the papers -- first of all,

11 the state record here is not sealed.  The state record is here

12 and the version of it that's on the record does have Doe's

13 name either redacted or as Doe.  It isn't like there's a

14 sealed state record here that can -- the only thing that's not

15 publicly available right now is the name.  That's number one.

16 I want to be clear about that.

17        And, number two, remember the plaintiff didn't sue

18 in federal court.  The plaintiff sued in federal state court.

19 Included federal claims to be sure, but it isn't as if the

20 plaintiff chose federal court.

21        Does that matter?

22        MR. VOLOKH:  Your Honor, turning to the second

23 point first, I don't think that it matters because the

24 plaintiff chose to include federal causes of action, and, you

25 know, Article III being what it is and federal law being what

1    it is, I'm sure plaintiff was well counseled that including

2    federal causes of action can bring the case into federal

3    court.  And once the case is in federal court, it is governed

4    by federal law, not by state law.  There's the I want to say

5    Haynes v. Haggerty case from the District of Vermont.  I

6    realize that's a different circuit but still dealing with a

7    Vermont sealing law in that instance, and the Court said that

8    can't apply to federal court.

9        So I think that the choice to include the federal

10   causes of action I think is what makes it so particularly

11   clear that the federal prohibition -- presumptive prohibition

12   on pseudonymity applies here.  And my sense is that very many

13   other police officers who challenge this bring only the state

14   causes of action and that may bring up the point that your

15   Honor mentioned about, look, there's a state cause of action

16   created, maybe there's a special rule for a special state

17   cause of action, but there wouldn't be a special rule for a

18   Section 1983 claim this was deliberately included by the

19   plaintiff.

20       I want to make sure that I am right in saying --

21   yes, Section 1983 is exactly what he brought up.

22       As to the first point, the reason I thought that

23   the record was sealed is there was in fact an unsealed version

24   of the record filed, I believe it is document No. 4, and I

25   thought that it was then sealed because it contained the name

1    of the parties, but it sounds like perhaps it was stricken

2    rather than sealed.  So that's the only reason I was under the

3    impression that it was a sealed copy of the state record.

4            THE COURT:  It's really just a complaint is all it

5    is.

6            MR. VOLOKH:  Yeah.

7            THE COURT:  All right.  I didn't mean to interrupt

8    you.  Go ahead.

9            MR. VOLOKH:  Well, your Honor, I think I've laid

10   out my argument, and I hope I responded to your questions.

11   But of course if I haven't or if there are other questions, I

12   would be delighted to respond further.

13           THE COURT:  You have.

14           Now, a couple more questions I guess.

15           Have you intervened in the state court action, too?

16           MR. VOLOKH:  No, your Honor.  I have not.  I have

17   thought possibly about it.  I have to say I'm more comfortable

18   in federal court and I may yet end up intervening in the state

19   court action, but if this Court grants my motion to unseal,

20   excuse me, motion to oppose pseudonymity, then there really

21   wouldn't be much of a point.

22           THE COURT:  Yeah.  All right.

23           Now, let me kind of -- this is related to that last

24   question, but I want to retread something that we've already

25   covered a little bit.  And you've made the argument -- it's

1    clearer to me now your point that perhaps, you know -- when I

2    raised the fact that this is a special cause of action created

3    by statute, you point out, well, no, it's not just that,

4    there's more here than just traditional federal litigation.

5         Does that make the statute -- I agree with you that

6    the statute does not control for sure in our court.  Does it

7    make the statute irrelevant?  I mean isn't the statute

8    something I should be considering though regardless of whether

9    I think it controls or is the statute just something I

10   shouldn't even concern myself with in deciding this?

11        MR. VOLOKH:  Your Honor, my answer is that you

12   should not consider the statute because, again, this is a core

13   question of federal procedure.  Even in a diversity case under

14   Erie this Court ought to apply federal law and not state law,

15   but especially in a federal question case.

16        Moreover, I believe that as a result of the remand

17   the statute just simply is not even raised in this case.  As I

18   understand it, the only count that raises the statute, counts

19   perhaps, are 3 and I think probably 4 depending on how you

20   visualize the mandamus issue, and they're now no longer in

21   federal court.  That's been remanded.

22        So the only thing that remain are federal and state

23   constitutional substantive due process, but primarily federal,

24   federal procedural due process, and libel.  Really very

25   traditional claims.

1         Now, it's true that the back story of this case

2    obviously involves the statute, but I don't think that that

3    can undermine the federal common law right of access and

4    certainly not the First Amendment right of access that all of

5    the public enjoy to figure out what's going on here.

6         After all, here we have someone who's a former

7    public official -- I mean, under libel law he would be treated

8    -- not been treated as a public official -- suing the

9    government.  There are allegations of presumably serious

10   misconduct on the parts of a former public official.  He's

11   alleging serious misconduct, not just statutory, state

12   statutory violations, but violations of the federal

13   Constitution on the part of the government.

14        The Doe v. Meglass case, which is not binding on

15   this court because it's a Third Circuit case but was brought

16   up by the plaintiff, actually specifically discusses that

17   claims against the government and claims I believe involving

18   public officials are especially -- it is especially important

19   for the government to monitor, excuse me, for the public to

20   monitor that, and I don't think that a state law can prevent

21   that kind of public access to what is after all federal court

22   records involving federal question jurisprudence.

23        THE COURT:  Understood.  All right.

24        I'll probably circle back to you, Professor, in a

25   few minutes.  I have a few other questions for others.

1          MR. VOLOKH:  Thank you, your Honor.

2          THE COURT:  Mr. Martin, you know, let me ask

3    you just as a -- I don't want to say as a perfunctory sort of

4    formality, but we don't know your position on this issue.  Do

5    you have one?

6          MR. MARTIN:  We don't have a position, your Honor.

7    The town takes no position on the motion.

8          THE COURT:  All right.

9          You know, something that's interesting is that, you

10   know, there's a back story to why we're in federal court, sort

11   of an interesting procedural gymnastics that took place that

12   was part of the case before you got involved, Professor.

13         I wouldn't be surprised if I asked Mr. Meier, you

14   know, if you could just go back to state court and litigate

15   this case under the statute, you probably would, right?

16         MR. MEIER:  We would.  We would prefer to be in

17   state court.

18         Part of the issue is that the New Hampshire

19   Legislature did not provide a private cause of action in the

20   statute so you need predicate actions -- or it's potentially

21   that you need a predicate action, including a substantive due

22   process claim, to raise a question under the statute.

23         As you might recall, we have three arguments.  One,

24   that the conduct alleged did not occur.  Second, that if he

25   was afforded an appropriate hearing under the substantive and

1    procedural due process that met his substantive and procedural

2    due process rights, he would not have been found to have

3    engaged in any sort of such conduct.  And, three, the conduct,

4    even if proved, does not rise to the level of reporting under

5    the statute or the criteria developed by the state of New

6    Hampshire for inclusion on the EES.

7              That's why we have the predicate actions.  That's

8    why this case is one case.  These are actions that are part of

9    and are predicate to the claim under RSA 105:13-d.

10             So we agree with you that this is a special cause

11   of action.  It is all part and parcel of a case brought

12   pursuant to RSA 105:13-d.  And in that statute they

13   specifically say that the name and corresponding information,

14   any sort of identifying information is confidential not only

15   through the court action but through any appeal and until all

16   appeals have been exhausted.

17             The New Hampshire Legislature and the Governor in

18   signing that legislation took significant steps to protect the

19   anonymous nature of somebody contesting their inclusion on the

20   EES.

21             I would state to your second question to Professor

22   Volokh about whether this -- even if the underlying state

23   statute doesn't apply and control this Court, which I agree it

24   does not, under the law cited by Professor Volokh an important

25   thing to look at by this Court is what the public policy

1    interests are.

2          And the state has taken a significant and pretty

3    clear position on what their position is on proceeding

4    anonymously in these cases, and that is that the officer

5    should be able to proceed anonymously.  And in weighing what

6    the public policy is in granting or denying a motion to unseal

7    or allowing us to proceed by pseudonym, it's that public

8    policy and the explicit statement of the state that officers

9    should be able to proceed anonymously.

10          THE COURT:  I'm going to ask you to clarify

11    something for me in a minute because I might be

12    misunderstanding something about the statute and the

13    procedural posture of the case, but let me just ask you some

14    real practical questions first.

15          I mean, if your client had a choice, right, if he

16    knew I was going to order his name to be revealed here, no

17    more pseudonym in the federal case, what would he do?

18          MR. MEIER:  I would have to discuss with him

19    whether it's appropriate to dismiss the federal case and

20    proceed only on the state court claims knowing that there is a

21    risk that somebody down in the state court argues that you

22    don't have a 105:13-d claim because you haven't alleged the

23    predicate acts, and we would have to take that risk.

24          It completely undermines the relief that he's

25    seeking which is preclusion of -- inclusion on the EES, which

1    the damage caused by inclusion on the EES is unemployability

2    in his chosen profession.  If his name is out there as a

3    potential -- one way or the other -- if his name is out there

4    one way or the other, that causes the same damage.

5              THE COURT:  If his name is out there as a law

6    enforcement officer who may have reasons that his credibility

7    may be questioned, bottom line, right?

8              MR. MEIER:  Correct.

9              THE COURT:  Talk to me more about this because I

10   might have misunderstood this aspect.  You're saying they need

11   the predicate acts to be able to I guess state a claim under

12   this statute, right?  Because, you know, I view this as a

13   statutory cause of action, but you're telling me it's not

14   exactly that, there needs to be more.

15             Talk to me about that more.

16             MR. MEIER:  Well, the problem with the way the New

17   Hampshire Legislature worded the statute, it does not provide

18   an explicit cause of action in state court.  It does not say

19   an officer can bring this claim in state court.

20             So there is a question out there as to whether an

21   officer can simply bring a claim under RSA 105:13-d or you

22   need a separate cause of action that you can get into court

23   and then --

24             THE COURT:  Request the statutory relief as part of

25   your remedy?

1          MR. MEIER:  Correct.

2          THE COURT:  Yeah.  And when you added the claims,

3   they got removed.

4          MR. MEIER:  Correct.

5          THE COURT:  Now, as far as I know, this isn't the

6   only federal case in the state, right?  Are you handling a

7   number of these claims in state court?

8          MR. MEIER:  No.  This is my only one.

9          THE COURT:  My memory is there are some others.

10          MR. MEIER:  There are.

11          THE COURT:  But they're pending in state court

12   only.

13          MR. MEIER:  The last time I looked at the list we

14   were the only one that was removed to state court, and whether

15   that's because people didn't bring the same claims or the

16   towns in those circumstances did not choose to remove, I don't

17   know.

18          THE COURT:  Yeah.  It seems to me you could bring,

19   I don't know, similar claims to what you've brought under

20   state law, you know, state constitution or something, but I

21   don't want to get too far in the weeds with that.

22          MR. MEIER:  You could.  That doesn't resolve the

23   whole problem though because we have Professor Volokh saying

24   he intends to or is considering intervening in the state court

25   matter.  It might provide a different body of law.

```
 1              THE COURT:  Exactly.
 2              MR. MEIER:  Although I don't think it's developed
 3    in New Hampshire.  It's not developed in the First Circuit,
 4    nor is it developed in New Hampshire.  So we run into the same
 5    problems.
 6              I think even once you get to the federal common law
 7    on pseudonymity we prevail under the Meglass factors.  I think
 8    if you look at Professor Volokh's briefing, he seems to ignore
 9    or skip over the Meglass factors saying that it doesn't apply.
10              THE COURT:  He says they don't apply.  They don't
11    really apply.
12              Judge McCafferty here has said she thinks they're
13    consistent with our circuit and these principles.
14              MR. MEIER:  Correct.
15              THE COURT:  It seems to me the best -- I don't know
16    a better course, to be honest, to evaluate this than those
17    factors myself.
18              MR. MEIER:  This court -- three judges of this
19    court have identified the Meglass factors as appropriate or
20    consistent with our case law.  Judge McCafferty, Judge
21    McAuliffe, and Judge DiClerico all did so.
22              I think we cited the Twitter case, which was Judge
23    McAuliffe's case, 2020 DNH 152.
24              Judge McCafferty looked at it in the Dartmouth
25    case, 2018 DNH 088.
```

1          Judge DiClerico looked at it in another <u>Dartmouth</u>

2     case, 2018 DNH 2017.

3          We believe that that's the appropriate framework to

4     look at the case even if we get to the federal common law and

5     that, as we briefed, we would prevail under those factors.

6          THE COURT:  Yeah.  Does anybody know -- maybe, Mr.

7     Martin, you might be the one who knows this if anybody knows.

8     We used to have the AG's Office at the table here, but of

9     course they're gone because they're back in state court,

10    right?

11         What I'm wondering is if -- you know, there's the

12    list.  We used to call it the Laurie list and now it's called

13    -- I forget what it's called now.

14         MR. MARTIN:  EES.

15         THE COURT:  AES?

16         MR. MARTIN:  Exculpatory Evidence Schedule.  EES.

17         THE COURT:  Okay.  So we have the EES list,

18    Exculpatory Evidence Schedule, maintained at the AG's Office.

19         If someone is challenging, like this plaintiff,

20    right?  Like if somebody is challenging, are they considered

21    on the list?  I mean, what if someone called the AG's Office

22    now to find out or get discovery on a given law enforcement

23    officer who's on the EES but who's challenging his or her

24    status?  Do we know what the procedure is or how that's

25    handled at the AG's Office now?

1          MR. MARTIN:  I can't speak with authority on it,

2    your Honor.  My impression is that they are on the list.  As

3    of present, I believe that's how it works, but I can't

4    speak -- we don't keep the list so I don't know what procedure

5    they're using at DOJ.

6          THE COURT:  I wonder what prosecutors and defense

7    lawyers are using when there's someone who's on the list yet

8    who is in court challenging their inclusion on the list.

9          MR. MEIER:  Your Honor, I think the statute

10   actually speaks directly to that.

11         THE COURT:  Can you fill me in?

12         MR. MEIER:  Yes.

13         THE COURT:  I can look that up, too.  I just didn't

14   really know there was a state statutory provision covering

15   that.  What's the RSA?

16         MR. MEIER:  RSA 105:13-d.

17         THE COURT:  Yeah.  All right.

18         MR. MEIER:  I think it just says non-public.  So

19   placement on the EES would be non-public during the process.

20         I've submitted both the, well, the statutory

21   language but also the AG's memo on its procedure.

22         THE COURT:  Okay.  I'll take a look at it.

23         All right.  Mr. Meier, you've been answering a lot

24   of my questions, and I sort of interrupted your flow.  If

25   there's things you want me to know, you know, whether they're

1    in your papers or not, I'm listening.

2           MR. MEIER:  Sure.  I've hit most of them, but

3    obviously our primary argument is that the statute is clear

4    that during any process to vindicate rights under the statute

5    the officer's name and identifying information is to be

6    anonymous, to be confidential, and that that continues through

7    any appeal of that process.

8           And that's not only the controlling statute but

9    also a significant expression of what the state's position on

10   the public policy behind the statute was, and that's to keep

11   these officers' information public until it's determined

12   whether they're supposed to be on EES or not.

13          Under the Meglass factors, which again I cited the

14   three cases that this court has used those or at least said

15   that our law is consistent with those factors, we should

16   prevail in keeping the officer's information confidential

17   during the course of this case.

18          This is a case where -- the entire basis of this

19   case is damages that will or could occur if his name is

20   released to the public.  The very release of his name to the

21   public will cause the damages that we're seeking to avoid, and

22   that is a legitimate reason under the Meglass factors for

23   keeping this case anonymous and being an exception to the

24   underlying rule that cases are public in federal court.

25          And with that -- I think we've done a pretty good

1   job of briefing our position other than that, but if you have

2   any further questions, I'm certainly here to answer them.

3            THE COURT:  All right.

4            Let me give you a crack at these factors,

5   Professor, because I do understand your position which is

6   these aren't binding on this Court, and they're not.

7            I should clarify one thing.  I carefully read your

8   initial motion to intervene.  You are intervening asserting

9   your rights, common law and rights under the First Amendment,

10  but I wouldn't consider your motion, you know, a full-throated

11  challenge to the statute.  You're not trying to invalidate the

12  statute, right?

13           MR. VOLOKH:  No, your Honor.  I think the statute

14  just doesn't apply in this court.  There's no occasion to

15  decide whether it's valid or not.

16           THE COURT:  And you've given me something to think

17  about with your point about -- you know, because I've been

18  thinking about the statute as an important -- the state

19  statute as an important factor to consider about whether it

20  takes it out of this sort of run-of-the-mill because it's

21  meant to protect a certain -- it's meant to establish a very

22  specific public policy.  And your point has been, and it's

23  something that I need to think about, well, it just has no

24  application here and so don't factor that -- to the extent you

25  would think about that and factoring it into the Meglass

1  factors in some way, don't do that.

2          Let's talk about Meglass a little bit though.  I

3  understand your point.  My question for you is -- I assume

4  your view is that even applying the factors -- pseudonymity is

5  not warranted in this case even applying the factors.

6          Do you not want to go there or talk about them at

7  all, or do you want to take a crack at the factors?

8          MR. VOLOKH:  Your Honor, I would be delighted to.

9          And, yes, indeed I would argue -- or I do argue

10  that even under Meglass there ought to be no pseudonymity

11  here.

12          So, first, just to step back a bit.  The facts in

13  Meglass were that -- there was an e-mail sent Mr. Meglass, who

14  was also a police chief, accusing the plaintiff of having been

15  hanging around schools with an unknown mental status.  If

16  seen, stop and investigate.

17          So Doe thought, you know, this is kind of accusing

18  me of being a child molester or something like that.

19          So, to be sure, his name had been revealed in the

20  community, but obviously Doe did not want the name to be now a

21  matter of public record on the Internet.  Every time somebody

22  searches for his name they'll find a court case with that.

23          So that, too, was a situation where one could say

24  that the plaintiff was trying to avoid a certain harm.  He

25  wanted to clear his -- have a decision clearing his name.  He

1    wanted to get compensation for the harm.  And suing under his

2    own name would in a sense exacerbate the harm because it would

3    further broadcast the original information which again is

4    commonplace in such cases.  Yet the Court in Meglass said

5    there was no pseudonymity.  Why?

6           So the first factor indeed, as plaintiff points

7    out, was that in that case Doe's identity had not been

8    confidential.  It had been publicized within the community.

9    So that is a difference here.

10          Although in my briefing I cite examples of cases

11   where there was no pseudonymity allowed even though originally

12   there had been no publicity to the plaintiff's identity.

13          The second factor.  What harm is the litigant

14   seeking to avoid?  He fears that if others learn of his

15   identity, they'll believe that he's a pedophile.  That's a

16   pretty serious harm.  But the Court concluded that wasn't

17   sufficient and that, if anything, you know, litigating

18   publicly is the legally prescribed process for clearing one's

19   name in that situation.  Imperfect process to be sure, but

20   that's the one that we usually rely on.

21          Third, if this litigant is forced to reveal his or

22   her name, will other similarly situated litigants be deterred

23   from litigating claims the public would like to have

24   litigated?

25          Indeed, having to litigate in public will deter at

1    least some litigants.  I do think that in this case at least a

2    decision from this Court about federal law will not deter the

3    many other Does who are suing in state court.

4             And, your Honor, as you pointed out, even if there

5    is some state court cause of action that this statutory claim

6    has to be attached, it could have been a violation of New

7    Hampshire Constitution.  In fact, Counts 1 and 2 already

8    mention violation of New Hampshire Constitution.  So this case

9    is only in federal court because they also raise federal

10   constitutional objections.

11            Then the fourth factor.  Are the facts not relevant

12   to the outcome of the claim?  Doe's claim is not a purely

13   legal one.  That I think is why cases like Roe v. Wade were

14   relatively uncontroversially pseudonymous because it didn't

15   matter who Roe was.  That was a question about the

16   constitutionality -- the facial constitutionality of a

17   statute.

18            Here this is not a purely legal claim.  Obviously

19   there's a libel claim here which is all about the facts.

20   There's a substantive due process claim which the facts are

21   surely relevant, and the procedural due process claim I take

22   it the facts are also relevant to the question of what were

23   the procedures, were they reasonable in light of the

24   circumstances, and the like.  And certainly the complaint

25   points to various facts.  So the fourth factor cuts very much

1    in our favor.

2            The fifth factor.  Will the claim be resolved on

3    the merits if litigant is denied the opportunity for using a

4    pseudonym or will the litigant potentially sacrifice a

5    potentially valid claim to preserve anonymity?

6            (Court reporter asks Mr. Volokh to slow down)

7            MR. VOLOKH:  Oh, I am so sorry.  My students often

8    tell me that, and I feel really bad.  It's hard when I get

9    enthusiastic.

10           So thank you, and I apologize.

11           So the fifth factor again, it may be that the

12   plaintiff would chose not to litigate at all if he can't do it

13   pseudonymously.  But, again, that is very common in very many

14   claims, including libel claims and the like.

15           The sixth factor I think cuts very strongly

16   against pseudonymity.  Excuse me.  Not the -- the sixth factor

17   is about nefarious reasons which are not in play here.

18           But when we turn to the later factors, the thumb on

19   the scale that is the universal interest in favor of open

20   judicial proceeding weighs in favor of disclosing identity and

21   the second of the factors in favor of openness, does the

22   subject of litigation heighten the public's interest?  That is

23   totally on point.  Meglass is totally on point here.

24           The interest is heightened because defendants are

25   public officials in government bodies.  This factor supports

1  disclosure of Doe's identity.

2         So I think on balance the factor about the public

3  interest, the general public interest in supervising the

4  courts, the factor about this lawsuit being against a

5  government body and thus heightening the public interest in

6  knowing whether the public body is in fact misbehaving, and on

7  top of that, the fact not mentioned in Meglass, because it

8  wasn't really on point there, that the plaintiff himself is a

9  former public official as a police officer, and coupled with

10  the fact that this is a fact-based claim, fact-laden claim,

11  and not just a purely legal claim as in cases like Roe v. Wade

12  and the like, I think those cut in favor against pseudonymity.

13  And on balance the Meglass balance therefore comes out in

14  favor of the default.  The right of public access under both

15  the First Amendment and the federal common law.

16         THE COURT:  Let me ask you a little bit about this

17  distinction that -- about the idea that this is not a purely

18  legal case, right, that --I wondered about that as I read your

19  papers a little bit because, Professor, you know, I have some

20  familiarity with your work.  I'm not a regular reader of the

21  blog, but I do read it occasionally, and I have heard you on

22  podcasts, like Jeffrey Rosen's podcast, and I view you as a

23  person -- I view you as an academic with a -- this isn't

24  something I think you're trying to hide behind here.  You have

25  a very heightened interest in this particular issue of

1    anonymity, pseudonymity, and litigation.  And your interest

2    here, right, is in the principle.  It's not in the case.  It's

3    not in the case and what's going on in this town.  It's in the

4    principle.  It isn't as if you're going to conduct an

5    investigation of, as you've described them, the facts and the

6    people involved in the case.  You're more interested in

7    creating a pathway for members of the public or the media to

8    do that.  Is that fair?

9         MR. VOLOKH:  Your Honor, my personal interest is in

10   writing about the pseudonymity dimension of this case.  And,

11   it's true, I would not have noticed this case had it not been

12   for the pseudonymity.  I have a query running that finds

13   pseudonymous filings, and I thought that this is interesting,

14   this is odd.

15        I have gotten involved in a similar pseudonymous

16   case also involving a police officer suing for libel, although

17   they're suing a private critic for libel, in the Ohio courts.

18        But I'm also interested in the libel dimension of

19   this case.  I routinely write about libel cases.  And, as you

20   can see if you look at my blog, just in the last several days

21   there have been such throughout the country.

22        So I suppose I would have relatively less interest

23   in the procedural due process and substantive due process just

24   because that's not my scholarly area, but there is a libel

25   count here and this question about lawsuits by police officers

1    for libel against whoever, in this case it's against the town

2    that supposedly damaged their reputation, is something I would

3    routinely write about.

4         But on top of that it is true that my hope is that

5    if this case is made publicly available, that others in New

6    Hampshire who are very interested in the EES list and in the

7    controversy about it will also write about it.

8         I mean, I think it would be nice.  As a citizen, I

9    would like to see more news coverage of these issues, even if

10   I'm not the one to provide it, on the due process questions.

11        On the libel questions, again, this is something I

12   write about routinely.

13        THE COURT:  Here's a practical question that nobody

14   has addressed.  There's no reason for anybody to address it

15   because it really only arises under questions I've asked here

16   today, but I'm just wondering as I think this through.  I mean

17   I -- also what I do here, I want to do it in a way that's

18   respectful of the litigants and their interests.

19        I mean, Mr. Doe finds himself in this particular

20   posture unexpectedly I think, you know, and there's been a lot

21   happening in this case that has been unexpected, and it's been

22   sort of a little bit of a roller coaster for the plaintiff and

23   it's been worked out in a way that was satisfactory up till

24   now.  I don't mean worked out in terms of the resolution but

25   worked out in terms of the process.

1          So I would probably -- if I was going to decide to

2     grant this motion, I would probably want to give the plaintiff

3     some advance notice because he might want to -- he might want

4     to end this litigation, take his chances on the state court

5     and see if his claim would survive perhaps without the other

6     claims tied to it or maybe it would be amended.  There's a lot

7     that could happen there.

8          But thinking that through, I wonder what it would

9     solve.  Suppose, for example, just for any reason or no reason

10    Mr. Meier took a voluntary nonsuit, just took one, right?

11    Would that really kill -- would that really end your motion,

12    Professor?  I mean, if the case is over, you might still have

13    an interest in this information on the record -- on the docket

14    of this court.  And I guess it's sort of an academic question,

15    but it's not practical ramifications.  Does the end of this

16    litigation while it is still pseudonymous, would that render

17    your motion moot?

18          MR. VOLOKH:  Your Honor, I do not think that it

19    would.  Although I have to confess that I don't think this is

20    a settled question.

21          The closest analogy that I can think of is with a

22    question of sealing.  Just because pseudonymity is a special

23    case of sealing.

24          The leading case on this question I believe is from

25    the Second Circuit called <u>Bernstein v. Bernstein Litowitz</u>, and

1    it involved a case that had been brought and then very

2    promptly settled.  The case is at 814 F.3d 132, Second

3    Circuit, 2016.  So it was brought and then settled I want to

4    say within weeks.  And then it was I think 13 days after the

5    complaint was filed the parties settled the suit.  So they

6    wanted to seal the complaint because they didn't want it out

7    there doing damage to their reputations, and the Court said,

8    no, once you filed this complaint, that's a very important

9    document.  It's part of the fundamental architecture of the

10    case.  At that point the public has a right to access it even

11    though the Court had never actually acted on anything.

12            Here at least the Court has made decisions, albeit

13    non-dispositive decisions, on various features of the case.

14            At that point I believe, if I recall correctly, the

15    Court never even acted on the subject.  Nonetheless, the

16    Second Circuit said this needs to be a public document and

17    cannot be sealed.

18            THE COURT:  Understood.

19            Well, Mr. Meier, I didn't ask that question to

20    increase your anxiety in this situation any more than it's

21    already been raised, but I thought I had to ask it, to be

22    honest, because as I rolled out that hypothetical, you know,

23    process, I don't know if it really solves all the problems.

24            Do you have a view on that one way or the other?

25    I'm not suggesting you should end your case, but if you did

1    out of some fear of revealing the name of your client, do you

2    think that would moot the case, the motion here?

3              MR. MEIER:  I don't know.

4              THE COURT:  I don't know either.  So don't feel

5    ashamed to say that because -- even Professor Volokh who

6    studies these issues constantly says it's a little bit

7    unsettled.  And we analogized the sealing.  So I just thought

8    I would give you a chance to address it.

9              MR. MEIER:  Yeah, I think it's a significant risk

10   that even if I dismiss the claims his motions continue, but it

11   goes to the point that his interest in this case is purely

12   legal.  Even if you look beyond his interest in the

13   pseudonymity issue, it's, okay, maybe there's a secondary

14   interest in the EES list and how the EES list is handled,

15   which is also a purely legal issue.

16             So I think the answer to that question points to

17   the fact that also weighs in our favor on the Meglass factors,

18   but I just can't -- I don't know how -- I don't know how our

19   law or the law across the circuits comes out on post-dismissal

20   pseudonymity.

21             THE COURT:  Okay.  All right.

22             Let me just check my notes here before I wrap up.

23   I'll give everybody one more chance here.

24             Mr. Martin, anything you want to add to any of

25   this?

```
1              MR. MARTIN:  No, your Honor.

2              THE COURT:  Professor, anything you want to add?

3    Anything you haven't been able to say or get across?

4              MR. VOLOKH:  No, your Honor.

5              THE COURT:  All right.

6              And Attorney Meier?

7              MR. MEIER:  No, your Honor.  Thank you.

8              THE COURT:  By the way, I have inferred from your

9    argument, Mr. Meier, that Doe remains interested in working in

10   law enforcement.  Is that the case?

11             MR. MEIER:  It is, your Honor.

12             THE COURT:  That's what I thought, yeah.  Okay.

13             I have to admit I didn't know that until today, but

14   I could tell from your arguments that he certainly is, and

15   that's something I've got to think about.

16             All right.  All right everybody.  Thank you for

17   your presentations.  I appreciate it very much.  I ought to

18   get an order out here relatively shortly.

19             MR. MEIER:  Thank you, your Honor.

20             THE COURT:  I heard a few things today that have me

21   thinking about a few issues in a new way, and I want to make

22   sure I give it the full stroke of the pump, but it won't be

23   forever.  It will be relatively soon.

24             MR. VOLOKH:  Thank you, your Honor.

25             MR. MEIER:  Thank you, your Honor.
```

1          MR. MARTIN:   Thank you, your Honor.

2          THE COURT:   Thanks everybody.

3          (Conclusion of hearing at 10:55 a.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

4        I, Susan M. Bateman, do hereby certify that the

5   foregoing transcript is a true and accurate transcription of

6   the within proceedings, to the best of my knowledge, skill,

7   ability and belief.

8

9

10  Submitted:  7-19-22          /s/   Susan M. Bateman _____
                                 SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25